Filed 2/7/14

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of LINDA A. and STEVEN B. BOBLITT. | C072685 |
| LINDA A. BOBLITT,<br><br>        Appellant,<br><br>    v.<br><br>STEVEN B. BOBLITT,<br><br>        Respondent. | (Super. Ct. No. 04FL00159) |

        APPEAL from a judgment of the Superior Court of Sacramento County, Jaime R. Román, Judge.  Affirmed.

        Law Office of Sharon M. Huddle and Sharon M. Huddle for Appellant.

        No appearance for Respondent.

---

*  Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II, IV, V, and VI of the Discussion.


1

In this postjudgment marital dissolution proceeding, the parties extensively litigated the division of the proceeds from the sale of a parcel of community real property. On appeal from the resulting order, appellant Linda Boblitt (wife) contends -- among other things -- that the trial court violated her right to due process because, less than a month before the postjudgment evidentiary hearing, the court added an issue to those that were scheduled to be heard, thereby effectively precluding her from conducting discovery on the new issue because "discovery is cut-off 30 days before trial by statute." In the published portion of our opinion, we reject wife's due process claim because in a marital dissolution proceeding like this, once discovery closes before the initial date set for trial *of the action*, no provision of law operates to automatically reopen it upon or in connection with the filing of a postjudgment motion. Because wife never moved to reopen discovery following the filing of the postjudgment motion on which the evidentiary hearing was set, she was not deprived of any discovery rights by the trial court's ruling relating to the scope of the issues to be heard.

In the unpublished portion of our opinion, we reject the remainder of wife's arguments and affirm the trial court's postjudgment order relating to the division of the sales proceeds.

FACTUAL AND PROCEDURAL BACKGROUND

We take the initial facts from our prior unpublished opinion in this case (*In re Marriage of Boblitt* (Oct. 15, 2010, C059747)):

"Wife and respondent Steven Boblitt (husband) were married in December 1989 and separated in January 2004. Wife filed the petition for dissolution of the marriage in January 2004.

"At the time of separation, the parties were running two companies: Boblitt Trucking and Made Rite Concrete. In 2005, Scott German, a certified public accountant, was appointed as a 'sort of' receiver for the two companies plus a third, Steve's Rock N Ready Mix.

2

"The marriage was dissolved by a status only judgment of dissolution in October 2006.

"In April 2007, a two-day trial was held before Judge Peter McBrien on the characterization of a parcel of real property (the Hedge Avenue property). The remainder of the case was tried over 19 days before Judge James Mize in July and August 2007." (*In re Marriage of Boblitt*, *supra*, C059747, fn. omitted.)

On August 2, 2007, Judge Mize told the parties he was "going to try to get all of [his], not just decisions, but thinking and analysis . . . on the record so it w[ould] be available for production into the judgment in this case." As relevant here, the court divided numerous items of community property and debt and resolved various claims for credits and reimbursements. Among other things, the court stated as follows: "The debt taken by wife of 77,246 will be credited to her account. Debts, see community property by husband of 27,096 will be credited to him."[1] The court took under submission an issue regarding "pre-marital tax debt."

The court asked husband's attorney if he was going to prepare the judgment, and counsel agreed he would. The court reminded him to "submit it to [wife's] counsel for review."

At some point, husband's attorney wrote to the court "concerning the Statement of Decision and requesting a ruling on the submitted matters," and the court set a meeting with the parties and their attorneys for February 7, 2008. At that meeting, husband's

---

[1]     In making its oral ruling on the property issues, the court used two documents, copies of which the court handed out to the parties and filed in the case. The oral statement by the court about the debt credited to each party is reflected in the following lines handwritten by the court on one of the documents:

"Debt CP taken by W   $77,246"

"Debt CP taken by H    $27,096."

3

attorney submitted a proposed judgment and statement of decision to the court and served it on wife's attorney. The court also set a briefing schedule on the premarital tax debt issue.

Wife did not file or serve any objections to husband's proposed statement of decision. Instead, wife filed and served her own proposed statement of decision on February 22, 2008.

On April 2, 2008, the court issued an order after hearing that ruled on the premarital tax debt issue the court had taken under submission and that also addressed the court's statement of decision. With regard to the statement of decision, the order stated as follows:

"The Court has reviewed [husband]'s Proposed Statement of Decision in this case. [Wife] has not filed any objections to [husband]'s Proposed Statement of Decision. [Wife] has filed a [wife's] Proposed Statement of Decision. The court has reviewed [wife]'s Proposed SOD and found it significantly inconsistent with [husband]'s Proposed SOD. Since [wife]'s Proposed SOD is organized differently and is different in focus and style from [husband]'s Proposed SOD, the Court is unable to determine what provisions of [husband]'s Proposed SOD [wife] finds objectionable, if any.

"To the extent that the two proposed SOD's are submitted for the Court's consideration, the court finds [husband]'s Proposed SOD to be a more accurate reflection of the Court's findings at trial. In addition, since [wife] did not file any formal objections, the court has insufficient guidance to assist it in determining any possible objections [wife] may have had.

"Nevertheless, in its own review of [husband]'s proposed SOD, the Court found three items that needed correction or clarification: . . . ."

After articulating these three items (which are not relevant for our purposes) and making its ruling on the tax issue, the court concluded as follows:

4

"Subject to the addition of the Court's ruling on the tax reimbursement matter, the Court will otherwise adopt [husband]'s Proposed SOD as amended herein as the Court's Statement of Decision in this matter. [Husband] is ordered to prepare the formal final SOD with the above stated edits for the Court's execution and filing."

Thereafter, on April 14, 2008, the court filed the revised statement of decision and a judgment on reserved issues that incorporated the statement of decision. The bottom line of the property division and other determinations was that wife owed husband a small equalizing payment. The judgment and statement of decision did not conclusively and finally resolve all of the property issues, however. The court made some determinations regarding the Hedge Avenue property and another parcel of real property (the Ranchita Way property) that left certain issues for future resolution as follows:

*The Ranchita Way Property*

The court determined that the Ranchita Way property was community property and awarded it to wife, subject to an outstanding mortgage and home equity line of credit. The court further determined that husband was entitled to *Epstein*[2] credits for payments he had made on the mortgage and the line of credit after separation. The court ordered wife to "refinance the Ranchita home and hold husband harmless from all debt on the home." The court further ordered that "[i]f husband makes any additional mortgage payments due to Wife failing to do so, he shall have a right of reimbursement secured by all other property awarded to [wife] in this action." (These provisions were not part of the court's oral ruling in August 2007.)

---

[2]     An *Epstein* credit is the right to be reimbursed by the community for separate property funds used after separation to meet community expenses. (See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 83-86.)

5

*The Hedge Avenue Property*

The Hedge Avenue property, which had previously been determined to be community property, was "primarily a commercial property that the parties had utilized for their businesses," although "there [we]re also two small adjacent residences associated with the property." The court ordered the property sold and ordered that "the net proceeds shall be divided equally subject to equalization payments." The court also ordered that each party was to have "the right of first refusal to match any viable, good-faith offer to purchase the property from an 'arm's length', *bona fide* third-party, and purchase the property from the community." The court ordered wife to "immediately execute an Interspousal transfer deed on the . . . property in favor of Husband and Wife as tenants in common."

Additionally, the court noted that "[t]here were also residential rents paid by tenants" on the Hedge Avenue property and ordered that the parties were "to share equally in the net profit, if any, from the rental of the residential units at the property." The court ordered the parties "to collaborate and render an accounting which takes into account the income and expenses of the property and each party is entitled to one-half of the net proceeds, if any." The court further ordered that there would be no "rent charged to either party for truck space rental."

The court determined that wife was entitled to an *Epstein* credit for mortgage payments she made after separation on the Hedge Avenue property. The court also noted that "[o]n this same asset, in a previous order, the parties agreed that the [*Watts*] charge for the Hedge Avenue property would be $3,000.00 per month payable to the community.[3] As of trial, Mr. Boblitt had used the Hedge property exclusively for

---

[3] " 'Where one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use.' [Citation.] The right to such compensation is

6

twenty two months and, therefore, owed the community $66,000.00 'rent' for the property." The court "reserve[d] jurisdiction on updating these figures for equalization from the sale of the property."

Wife filed a timely appeal from the judgment, and this court affirmed in October 2010. (*In re Marriage of Boblitt*, *supra*, C059747.)

A year and one-half later, in March 2012 -- four years after the entry of judgment -- a third party offered to buy the Hedge Avenue property for $350,000. That offer expired before it was accepted, but the potential buyer later expressed continued interest in buying the property and revived its offer toward the end of April, although the amount of the offer was to start dropping after five days. On May 4, 2012, husband filed a motion to compel the sale of the property. Husband also requested that the net sales proceeds be placed in a trust account pending further order, that the parties "exchange a written accounting specifically setting forth their proposed credits with regard to post judgment contributions to the Hedge property," and that the court set a date for an evidentiary hearing on the division of the net sales proceeds.

In her initial response, wife informed the court that she wanted to exercise her right of first refusal. At an ex parte hearing on husband's request for emergency relief or an order shortening time, the court ordered that wife could exercise her right of first refusal by depositing the same amount as the third-party buyer would have to deposit in an account that could be withdrawn only upon order of the court. The court then set the hearing on husband's motion for May 18. Before that hearing, wife filed another response in which she requested that she be allowed to deposit the money necessary to buy out husband's interest in the Hedge Avenue property and that a "[r]egular evidentiary

---

commonly known as a '*Watts* charge.' " (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978, citing *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374.)

7

hearing [be] set to determine each parties [*sic*] claims for reimbursements on the property."

At the hearing on May 18, husband's attorney informed the court (Judge Kevin Culhane) that the third-party offer to purchase was now $329,000. Eventually, the parties worked out that wife would deposit $255,000, which was the difference between the $329,000 offer and the approximate amount due on the first mortgage, in an interest-bearing account by June 1, husband would execute a quitclaim deed, and wife would be entitled to exclusive use of the property as of that time. The court also ordered that husband's claim of damages to the community due to wife's failure to exercise her right of first refusal as to the first offer for $350,000 was preserved for trial, as were wife's claims for damages or offsets due to property use, etc.

Husband's attorney asked for "a hearing date . . . to adjudicate . . . this division" and "a date before that for the parties to exchange their accountings." The court asked, "is this going to be issues as it relates to this property or is it going to be all property issues involved in the marriage." Husband's attorney initially responded, "No, just as to this property." Wife's attorney said, "it depends." Husband's attorney then spoke up again, saying, "I'm sorry, there are some credits on page 5 [of the judgment] relating to husband making mortgage payments on another property." (This was a reference to the provision regarding the Ranchita Way property mentioned above.) Wife's attorney then said that wife had an issue regarding equipment that was awarded to her that she believed husband had destroyed. The court stated that it was "just trying to get how long a trial time [the parties] want[ed] for these issues." Wife's attorney suggested two days "would be good." Ultimately, the court set trial for August 16 and 17 on "financial claims as against the sales proceeds" with settlement conference set for July 24.

In mid-June, wife's attorney served husband's attorney with a request for production of documents, with the date of production set for July 13. On June 21, wife's attorney noticed husband's deposition for July 6.

8

On June 26, the parties' attorneys exchanged letters. For her part, wife's attorney refused to limit husband's deposition "other than to limit the inquiry into the current post-judgment issues before the court" and refused to withdraw the request for production of documents. She also stated that this was her "third request to explain how your client's Ranchita reimbursement requests have anything to do with the motion which was set for trial." Wife's attorney threatened to file a motion to compel husband's deposition with no restrictions and to include the Ranchita Way reimbursement issue in her motion.

For his part, husband's attorney asked wife's attorney to provide him with "authority that another deposition is allowed." (Underlining omitted.) Regarding the Ranchita Way reimbursement issue, husband's attorney identified the relevant provision in the judgment and referred wife's attorney to an accounting he had provided to her in March 2011, which included copies of canceled checks. He stated that husband "made payments of $15,747.54 on the first mortgage and payments of $2,208.85 on the second mortgage."[4]

On June 29, husband filed a motion requesting that "all issues related to each party's request for credits/debts pertaining to their portion of the sale of the community property . . . be heard at trial on August 16, 2012." The basis for this motion was the suggestion from the June 26 letter from wife's attorney that she was going to block any attempt by husband to introduce evidence regarding the posttrial payments he made on

---

[4] At trial in August 2012, husband offered the accounting from March 2011 in evidence. It was titled, "Respondent's Accounting Concerning Hedge Property." The claimed payments on the Ranchita Way property were itemized on the second and third pages of that accounting, and copies of canceled checks corresponding to those payments were attached. The claimed payments were included in the total of "approximately $64,358.53" that husband contended wife owed him, and husband asserted that the amount owed was "to be paid directly to [husband] from [wife's] share of the net sellers' proceeds." Husband further requested "that the subject property be sold and the net sellers' proceeds be distributed as ordered in the judgment without any further delay."

9

the Ranchita Way property. The hearing on husband's motion was originally set for August 1.

Around this same time, wife filed a motion to compel husband's deposition (even though the scheduled deposition date had not yet arrived), for evidentiary sanctions, and to exclude any claims related to the Ranchita Way property from the upcoming trial.[5] Wife's motion was set for hearing on July 24, the same day as the settlement conference.

Husband's deposition went forward on July 6 as scheduled, and he produced documents in response to wife's request for production on July 13 as scheduled.

In a settlement conference statement filed July 18, husband set forth in detail his position regarding the rental income that was collected on the Hedge Avenue property, the mortgage payments and other expenses he paid on the property, and the amounts he paid posttrial on the mortgage and the line of credit on the Ranchita Way property.[6]

On July 19, wife filed her response to husband's motion to have all issues of credits and debts heard at the August 16 trial. She argued that the request was "vague and uncertain, which could easily lead to due process issues." She also asserted that because trial was "only 3 weeks [away], adding new issues to trial would cut off any of my discovery rights on those issues." All that she said, however, about husband's claim for reimbursement for the posttrial mortgage and line of credit payments he claimed to have made on the Ranchita Way property was that this claim was "not in his prior motion and is not before the court at this time." Her greater focus was on new issues *she* wanted to raise about losing the Ranchita Way property in foreclosure because the loan was sold

---

[5] This motion is not included in the clerk's transcript on appeal, but husband's response to the motion is.

[6] These latter amounts were the same as stated in his June 26 letter to wife's attorney. (CT1 146, 190:26, 191:5) They consisted of four checks he wrote between October 2007 and February 2008 toward the mortgage and five checks he wrote between July 2007 and February 2008 toward the line of credit. (CT1 190:22-191:5)

and husband refused to give her any information about the new mortgage company so she could make the mortgage payments and about a mechanic's lien that was on the Ranchita Way property that she discovered only after trial.

In her response, wife also asserted that the judgment, which by then was more than four years old, contained "[c]lerical [e]rrors" (underlining omitted) that needed to be corrected, and she stated that she would be filing a motion to correct those errors.

At the hearing on July 24 on wife's motion to exclude any claims related to the Ranchita Way property from the upcoming trial, the court (Judge Culhane) asked if wife's attorney had sent contention interrogatories to find out what all of husband's contentions were. Wife's attorney asserted that the Ranchita Way issues were "not before the Court," but the court disagreed, stating, "They're before the Court because when you folks were here and we had to figure out who was going to buy . . . the Hedge Avenue property, one of the issues that your side raised was . . . we should not have to match the number that the third-party buyer will match because we have any number of offsets and credits that we believe we're entitled to. Their side said, no, you're not entitled to those offsets or credits. They're disputed because we have a number of other issues back and forth. All we said was, look, let's get the property sold so that we convert the real property into a sum of cash without prejudice to all parties' rights to litigate whatever they want in terms of their entitlements to that money. That was all."

For his part, husband's attorney argued that the trial would be limited to the facts, issues, and contentions set forth in the settlement conference statements both parties had filed. Wife's attorney complained that "there was a motion" but "[n]ow he's raising these other issues, and he wants to exclude my client from raising other issues that she has because those aren't in the pretrial statement because my view was that those were not set for trial . . . . So what's happening is my client's going to trial on issues that she never got any due process to in the beginning as to what it was that she was -- that they

11

were seeking so I could do any discovery on it." Wife's attorney "object[ed] to anything other than what's in his motion."

Adverting to the deposition of husband, the court asked wife's counsel if she got "an order allowing [her] to take that second deposition as required by the Code of Civil Procedure." She replied, "I don't know that that's required because this is post judgment. It's a separate case." She later stated that she "didn't come for leave of Court because he said he would appear."

As the discussion continued, the court asked if they could "all agree, you can't just send a second deposition notice just because you want to, right?" Wife's attorney replied, "I think in family law, not in civil law, but in family law there is a recognition that post-judgment motions act as a separate and individual case when it's post judgment . . . ."

Turning back to the Ranchita Way issues, the court suggested that wife's remedy, if she was unprepared to try those issues, was not to seek to limit the issues that could be raised at trial regarding division of the money from the Hedge Avenue property but instead was to move to continue the trial. Wife's attorney claimed she had asked for that relief, but in support of that claim she pointed only to her response to husband's motion to have all credit/debt issues heard at trial on August 16, where she had stated that wife consented to an order that "all issues [be combined] into one trial with [a] clear record of issues set for trial, appropriate factual claims and responses and time for discovery." She could not and did not point to a specific request to continue the trial. The court later reiterated that wife's remedy regarding her alleged lack of readiness on the Ranchita Way issues was to file a motion to continue the trial. In its order, the court denied wife's

12

motion "to limit the credit and debit issues between the parties in connection with their claims to Hedge properties [*sic*]."**7**

Following the July 24 hearing, wife apparently filed an ex parte application to continue the trial, but that application does not appear in the record on appeal. Instead, what appears is a preliminary response filed by husband on August 1 in which husband argued that the application should be denied because wife "had over two and a half months to bring a regularly noticed motion before the court seeking continuance of the trial date." No written disposition of the application is to be found in the record, but there is a transcript from a hearing on August 1.

At that hearing, wife's attorney began by raising a new issue, arguing that husband's attorney would not give an accounting of the rents he collected on the Hedge Avenue property from the date of separation to 2007. Husband's attorney responded that the original accounting was provided in March 2011, an updated accounting had been provided, and "[w]e've already briefed everything." He also argued that wife could "take [it] up with the trier of fact. And why is it an emergency today?"

The court (Judge Sharon Lueras) stated that it was denying the continuance because it "would be for the trier of fact to make a determination whether [what husband had done] was sufficient; and if not, you ask for what you want." Wife's attorney then asserted that she had "another ground" for a continuance, and she said that Judge Culhane had told her she could "do a continuance based on surprise," "so that's why I'm doing this." She went on to argue that the issue of husband seeking "$18,000 reimbursement for the Ranchita house" was "not in his pleadings from May 4th" and "not in the transcript when we set it, and therefore, it is not something that he can raise at trial."

---

**7**      The remainder of husband's motion that was originally scheduled for hearing on August 1 was resolved at a later hearing on the afternoon of July 24. Since no other part of that motion is relevant to the issues on appeal, we need not discuss that later hearing.

13

When the court asked wife's attorney if she was "aware of Ranchita," she admitted she knew of it but she argued that husband's motion was "just on Hedge." The court suggested that wife file a motion in limine. The court then denied the motion to continue the trial because "[b]ased on the moving papers and argument, it appears that all parties are aware of the properties that are involved in this matter."

The evidentiary hearing regarding division of the funds from the sale of the Hedge Avenue property began on August 16 before Judge Jaime Román. At the outset, wife's attorney reiterated her complaint about the scope of the issues to be tried. Among other things, she asserted the following:

"If you look at the motion we're here on today, there's specific issues that were raised for the hearing. A specific declaration saying these are the facts, this is what I want, it lists out exactly what he wants. There's never been an amendment to that motion saying I want to put before the Court this issue, this issue, this issue.

"[S]o basically his Statement of Issues he added a bunch of stuff like, oh, well, my Statement of Issues says this, so I get to raise this, okay. So I go back to the motion and say, wait a minute, we were only set for your motion. We were not set on everything else.

"¶ . . . ¶

"[S]o I don't think some of the issues that he raises in his Statement of Issues that he's going to try to contend are before the Court and want to put evidence on, they aren't even before the Court. . . .

"¶ . . . ¶

"[T]he motion that he has that he's asked for a trial on, we're here on it. And that motion I'm fully prepared to respond to. The stuff that he added in his Statement of Issues that aren't in his motion, I object to those issues being heard for due process and notice . . . ."

14

Eventually, rather than insisting on a ruling from the court at the outset on the scope of the issues to be tried, wife's attorney proposed that "if I feel like they're raising issues that were not in the motion that I -- there was no declaration in support of it or anything like that, then I'll raise my objections [then]."

Later, when husband's attorney began to question husband about the payments he made on the Ranchita Way property, as shown on the accounting prepared in March 2011, wife's attorney objected that the testimony was "[u]tterly and completely irrelevant to what's before the Court." The court sustained the objection. When husband's attorney tried again, wife's attorney objected again, and the court stated that it was "not understanding the connection based on the issue that you're asking me to determine." After the court located the judgment in the court file and took judicial notice of it, husband's attorney pointed out the provision related to payments on the Ranchita Way property, and the court concluded that husband was "seeking to enforce . . . the right to reimbursement set forth in" the judgment and overruled wife's objection to husband's testimony. Wife's attorney interjected that "Ranchita is no where [*sic*] in his May 4th pleading. The fact that these payments were made and that he wants credit for them, it's not in there." She then argued about how wife claimed to have lost the Ranchita Way property to foreclosure because husband had prevented her from obtaining information about the mortgage. From this, the court understood that wife wanted to raise the issue about the mortgage in defense to husband's claims for reimbursement for payments he claimed he made on the mortgage, and the court was going to allow wife to do that. Husband's attorney said, "that will be fine." Wife's attorney then complained that she did not "have the records on Ranchita with [her] because it was not an issue before the Court." The court stated that it would put the trial over for another day for wife to prepare. Wife's attorney responded, "As long as I get the opportunity to get the discovery so I can get the records to you, that would be fine." The court replied, "I'm going to do right by you."

15

Wife's attorney then objected to the testimony regarding reimbursement for payments on the Ranchita Way property because she claimed the provision in the judgment on the subject was "no where [*sic*] in the judge's [oral] ruling. [Husband's attorney] just added it" to the statement of decision when he prepared it. Husband's attorney argued that "this issue" had been dealt with on appeal from the judgment and that "one doesn't look at transcripts. You look at the judgment, Statement of Decision. Despite any stray or conflicting comments before, this is the one that the Court ultimately approved, period and full stop." Ultimately, the court decided to take an early lunch break and use the time to read the transcript of Judge Mize's oral ruling, the statement of decision, and the appellate decision, while allowing wife's attorney time to read the appellate decision as well. Wife's attorney stated that there were "two other issues" she wanted to raise, but the court told her to "[j]ust file it" and get it to the court by 1:00 p.m., and the court would read it.

During the break, wife's attorney prepared and filed a handwritten request to correct three "clerical errors" in the judgment (only two of which remain at issue on appeal). In addition to the Ranchita Way reimbursement provision that she asserted was not part of the trial court's oral ruling, wife's attorney complained that the court's oral ruling gave wife credit for $77,246 in community debts she paid, but that provision was omitted from the judgment and she received no credit for those payments. Wife's attorney requested that the court amend the judgment to conform to the oral ruling.

After the lunch break, husband's attorney argued that because wife failed to file any objections to husband's proposed statement of decision, any objection was "waived." Wife's attorney argued that in the prior appeal from the judgment this court "never made a decision on the Statement of Decision," and a clerical error in a judgment can be corrected at any time, even after appeal. Judge Román ultimately denied wife's request to correct the alleged clerical errors in the judgment because he believed the request should be made to Judge Mize and, more importantly, because any issue wife had with

16

the statement of decision was "forfeit" because wife did not raise it in her appeal from the judgment, which this court affirmed.

In a written ruling the court issued later that same day, the court ruled that wife's request to correct the judgment "--even her effort to characterize the omission as clerical--is barred by res judicata. In other words, this issue has been put to rest by the appellate court's affirmation of her judgment. As reflected by the appellate court in her appeal, 'No error has been shown.' " (Fns. omitted.) Accordingly, the court concluded that it "lack[ed] jurisdiction to do more than enforce the appellate affirmed judgment."

Following the denial of wife's motion to correct the judgment, husband's attorney resumed his examination of husband regarding the various expenditures shown in the March 2011 accounting, and that document was admitted into evidence.

Thereafter, on cross-examination, wife's attorney questioned husband about his use of the Hedge Avenue property after the trial and about the provision in the judgment that charged him $66,000 for using the property exclusively for 22 months up until trial and that "reserve[d] jurisdiction on updating these figures for equalization from the sale of the property." Husband testified that he did not think he should be charged $3,000 per month for continuing to use the Hedge Avenue property after judgment, and when wife's attorney asked him why, he replied, "Because at that point it wasn't rentable. At any point it wasn't rentable. And why should I rent from myself? I owned half the property. What would I rent from? She had the ability -- she left equipment there. She had use of it. It was her own choice that she didn't come to the property." Husband later added, "the property itself other than the two houses [w]as not rentable in any way, shape or form. [It wasn't] zoned for anything that we did there, ever."

As wife's attorney argued to the court that the $66,000 figure from the judgment should be updated based on husband's continued use of the Hedge Avenue property after trial, the court observed that "[t]he judgment . . . effectively transmuted [the property] from community property to tenants in common," and the court asked, "how can you

17

have a [*Watts*] charge on tenants in common?" Wife's attorney responded that the Hedge Avenue property was "community property regardless of title." The court disagreed, saying that "Judge Mize took it out of that characterization."

Wife's attorney subsequently began examining husband about the rent he collected on the two residences on the Hedge Avenue property. Her examination eventually turned to rents collected before the trial in 2007. She asked if husband ever provided her "with an accounting of the amount of rents that [he] collected from February '04 through the date of [trial], August 2nd, 2007," and husband replied that he did not "think it was relevant." Wife's attorney pointed out the provision in the judgment regarding an accounting of the income and expenses of the property and the division of the net profit and asked if husband ever "engage[d] in that accounting of the profit of the Hedge Avenue property." Husband responded, "There weren't any." He later testified that the rents were paid "to Boblitt Trucking probably for most of that time and [expenses were] paid from Boblitt Trucking for a lot of that time. We still had a joint business [in] common."

As wife's attorney continued her cross-examination, husband's attorney interjected that "[t]his matter ha[d] been adjudicated by the Court of Appeal." He directed the trial court to a portion of this court's unpublished opinion on wife's appeal from the judgment that dealt with an "undeveloped, unsupported argument" regarding the rent and expenses on the Hedge Avenue property. The court then said to wife's attorney, "Can we deal with the post August 2nd, 2007 period? [¶] . . . [¶] . . . I'm here to deal with the events after the issuance of the judgment and the sale of this property. I can't change what took place before." Upon further argument from wife's attorney, the court stated that it would "deal with those rents collected after the issuance of the judgment, not before it" "because I can't redo your equalization payment up to that date that the order got issued." Wife's attorney argued that Judge Mize had ordered the parties to do an accounting of the rents and expenses relating to the residences on the Hedge Avenue

18

property for the period before trial and "[t]hat has not occurred." Husband's attorney argued, "That was the claim on appeal, and [the Court of Appeal] dealt with it in the negative." Pointing the court back to our opinion, husband's attorney contended, "she brought up this claim that she was owed past due rent, and . . . the Court of Appeal denied the claim." Wife's attorney responded, "They affirmed the judgment. It says it right in there. They didn't overrule what the judge said. They didn't overrule it." The trial court disagreed, saying, "No. What they did was they gave no credence to her contention." Wife's attorney countered, "Well, they said she didn't even have [a] contention." The court said, "Okay. I'm not going there. I'm going to limit you to post."

Following a break, wife's attorney asked the court if it was holding that "the prejudgment for any monies that the parties may owe each other, any calculations prejudgment, you are saying that's not before the Court or cannot be addressed." The court reiterated, "I'm only going to deal with my world post this judgment." The court told wife's attorney, "maybe [wife will] have to force an accounting and get that, but not in this trial, not based on the issues that were framed for me."

The court later issued a written ruling on the subject, stating that it was "limit[ing] the parties to a post-judgment consideration, using the August 2, 2007 date set forth in the court's judgment, as the salient date for 'updating . . . figures for equalization from the sale of the property.' " According to the court, its decision was based "on several factors: first, the judgment included amounts up to a set date; second, the court, having recharacterized the property's ownership from community property to a post-judgment tenancy in common, appropriately permitted further (but new) allocations of proceeds between the tenants upon the sale of the property; and third, the appellate ruling in this matter, having affirmed the earlier court's judgment, is not without effect re[:] guidance and limitation on the instant post judgment proceedings." (Fns. omitted.)

19

Following a second day of testimony, the parties submitted closing briefs. In her closing brief, wife admitted that "[t]he parties did not have an agreement for future payment of rent post-judgment [by husband on the Hedge Avenue property], but the court ordered such in the parties['] judgment." In support of this argument, wife referenced the provision in the judgment whereby the court "reserve[d] jurisdiction on updating these figures for equalization from the sale of the property." Wife requested that husband "be charged for 58 months of rent at $3,000.00 per month for a total of $174,000.00." (Bolding omitted.)

In reply, husband argued that because the parties were tenants in common with respect to the Hedge Avenue property following Judge Mize's ruling in August 2007, they each had an equal right to possession of the property and therefore wife had no right to compel husband to pay rent.

After hearing argument on September 20, the court issued its tentative ruling. Following written input from the parties, the court issued its statement of decision and order on October 12. As relevant here, the trial court awarded husband $17,956.39 for "payment re Ranchita." Based on this and other findings, the court ordered that some of the proceeds from the sale of the Hedge Avenue property to wife were to remain in the trust account, to be divided later following the resolution of a lien on the property and husband's removal of debris and other material on the property, and that some of the proceeds were to be paid to the county for code enforcement violations. From the remaining proceeds, wife was to receive just under $64,000 and husband was to receive just under $96,000.

Wife timely appealed the court's order. Husband did not file a respondent's brief.

DISCUSSION

I

*Rules Of Civil Procedure Do Apply In Family Law*

On appeal, wife first contends the trial court (Judge Culhane) deprived her of due process when the court "grant[ed husband's] motion to add Ranchita Way reimbursements as an issue just three (3) weeks and (2) days before trial." According to wife, by doing this the court "terminated her discovery rights before they ever began, as discovery cut-off is 30 days before trial by statute." Without the right to conduct discovery and without "any factual pleading in support of [husband's] Ranchita Way reimbursement claims," wife contends she was "obliged to defend against [his] claims based on whatever occurred at trial." She concludes, the "[f]undamental requirement of due process is [the] opportunity to be heard and the opportunity must be granted at a meaningful time and in a meaningful manner. [Citations.] A meaningful time for notice would include an opportunity to obtain evidence under the discovery statutes, an opportunity [wife was] denied."

Wife's due process argument is based on the assumption that she had the "right" to conduct discovery prior to the evidentiary hearing on husband's postjudgment motion to divide the proceeds from sale of the Hedge Avenue property. That assumption, in turn, appears to be based on the belief of wife's attorney that "in family law, [but] not in civil law, . . . post-judgment motions act as a separate and individual case" for purposes of discovery. That belief is incorrect.

Section 210 of the Family Code provides that "[e]xcept to the extent that any other statute or rules adopted by the Judicial Council provide applicable rules, the rules of practice and procedure applicable to civil actions generally . . . apply to, and constitute the rules of practice and procedure in, proceedings under this code." (See also Cal. Rules of Court, rule 5.2(d); *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1354 ["Although some informality and flexibility have been accepted in marital dissolution proceedings,

21

such proceedings are [generally] governed by the same statutory rules of evidence and procedure that apply in other civil actions"].) No statute or rule of court exempts a marital dissolution proceeding from the application of the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.). Accordingly, the provisions of the Civil Discovery Act -- including those provisions that govern the time for completion of discovery (Code Civ. Proc., § 2024.010 et seq.) -- apply to such proceedings. Under those provisions, discovery generally must be completed "on or before the 30th day . . . before the date initially set for the trial *of the action*" (*id.*, § 2024.020, subd. (a), italics added) and, absent court order (or an agreement of the parties), "continuance or postponement of the trial date does not operate to reopen discovery proceedings" (*id.*, § 2024.020, subd. (b)).

Here, it appears the date initially set for trial of *the action* was February 8, 2007.[8] Thus, the discovery cutoff date was in January 2007, and discovery closed at that time by operation of law.

Wife does not point to, nor are we otherwise aware of, any provision that *reopens* discovery in a marital dissolution proceeding just because one of the parties has filed a postjudgment motion. The assertion of her attorney that "post-judgment motions act as a separate and individual case" for purposes of discovery finds no support in the law.

It is true that our Supreme Court has held that "in the case of a mistrial, order granting a new trial, or remand for a new trial after reversal of a judgment on appeal, the last date for completing discovery is 15 days before the date initially set for the new trial of the action." (*Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 247.) That holding does not inform or affect our decision here, however, because we are not dealing

---

[8]     This appears from the fact that in January 2007, wife filed her "Statement of Issues, Contentions and Proposed Disposition of the Case," which identified the trial date as February 8, 2007. It also appears from a stipulation and order whereby the trial, "currently scheduled for February 8 and 9, 2007," was continued until April 2007.

with a trial "of the action." Rather, we are dealing with an evidentiary hearing on a postjudgment motion. As we have noted, once discovery closes before the initial date set for trial of the action, no provision of law operates to automatically reopen it upon or in connection with the filing of a postjudgment motion.

The Family Code does contain an article that allows for limited postjudgment discovery relating to the "modification or termination of an order for child, family, or spousal support." (Fam. Code, § 3660 et seq.) Under the provisions of that article, a party may request that the other party produce a current income and expense declaration even if no motion for modification or termination of the support order is pending. (*Id.*, § 3664, subd. (a).) Under certain circumstances, the requesting party may also request information on the other party's income and employment benefits from the other party's employer.[9] (*Id.*, § 3664, subd. (b).) "Methods of discovery other than that described in this article may only be used if a motion for modification or termination of the support order is pending." (*Id.*, § 3662.)

We do not understand the foregoing provision to imply that once a postjudgment motion for modification or termination of a support order *is* pending, discovery in the action automatically reopens and all of the other methods of discovery available under the Civil Discovery Act are available to the parties without agreement or court order. Rather, we understand the provision to mean simply that when there is no motion pending, the only discovery that may be conducted is a request for an income and expense declaration and, in some instances, a request for pay and benefit information from the other party's employer. In other words, if after judgment a party simply wants

---

[9] Such a request can be made only "[i]f there is no response within 35 days of service of the request [for an income and expense declaration] or if the responsive income and expense declaration is incomplete as to any wage information, including the attachment of pay stubs and income tax returns." (Fam. Code, § 3664, subd. (b).)

to explore the possibility of moving to modify support, the only discovery that is available is that provided for in Family Code section 3660 et seq.

In any event, these provisions have no direct application here because husband's postjudgment motion did not seek to modify or terminate a support order.

Once the discovery cut-off date has run and discovery has closed, the only means provided in the Civil Discovery Act for reopening discovery is a motion for leave of court. (Code Civ. Proc., § 2024.050, subd. (a).) It is true that the statute specifically speaks only of the court granting "leave . . . to reopen discovery *after a new trial date has been set*" (italics added), and that is not exactly the situation in a marital dissolution case where a postjudgment motion has been filed. Nevertheless, we construe the statute as allowing a motion to reopen discovery after judgment in a marital dissolution proceeding because otherwise, in light of the fact that there is no basis for concluding that discovery automatically reopens for each and every postjudgment motion, not construing the statute in this manner would leave the parties without any access to discovery on postjudgment matters where it may be needed.[10]

Thus, we conclude there is no automatic right to conduct discovery under the Civil Discovery Act in connection with a postjudgment motion in a marital dissolution proceeding. To secure the right to conduct such discovery, a party must secure the agreement of the other party or must obtain a court order for leave to conduct discovery.

---

[10]    It might behoove the Legislature, or the Judicial Council, to specifically address the application of the Civil Discovery Act to postjudgment family law proceedings. (See Fam. Code, § 211 ["Notwithstanding any other provision of law, the Judicial Council may provide by rule for the practice and procedure in proceedings under this code"].) In the absence of specific guidance, however, we are left to construe what law there is, and we construe the existing law to require a motion to reopen discovery in a marital dissolution proceeding when discovery is desired regarding a matter raised by a postjudgment motion. Of course, the parties can always agree between themselves to permit postjudgment discovery even without a court order.

The practical effect of our conclusion here is that wife cannot complain she was deprived of due process because the trial court allowed husband to "add Ranchita Way reimbursements as an issue" after the supposed discovery cut-off preceding the August 16 evidentiary hearing because discovery never reopened. It is true husband went along (albeit begrudgingly) with a deposition and a request for production of documents, but absent an order or formal agreement reopening discovery, wife had no legitimate basis to believe she was entitled to conduct discovery on the subject of husband's motion, including his claim for reimbursement for posttrial payments on the Ranchita Way property. If wife had obtained an order reopening discovery, and if husband had failed to disclose in response to proper discovery requests that he intended to seek reimbursement for posttrial payments on the Ranchita Way property, wife might have had a basis to complain. As it is, however, wife cannot complain that she was denied the opportunity to conduct discovery when she never properly sought to reopen it.

In addition to the foregoing, there is another reason why wife's due process claim regarding husband's posttrial payments on the Ranchita Way property is without merit. Essentially wife's claim is that she was sandbagged: husband filed a motion that said nothing about the Ranchita Way property and then, barely three weeks before trial, the court allowed him to add his Ranchita Way claims, an issue she knew nothing about. Indeed, she asserts that husband's "factual bases for his Ranchita Way claims were never disclosed until he testified at trial." On the record before us, however, that assertion is false.

The evidence here showed that in March 2011, husband's attorney sent to wife's attorneys (both her postjudgment attorney and the attorney who represented her at trial in 2007) a document entitled, "Respondent's Accounting Concerning Hedge Property." The very first items listed in the accounting were husband's posttrial payments on the Ranchita Way property. Copies of canceled checks corresponding with those payments were attached. These payments -- totaling $17,956.39 -- were included in the total of

25

"approximately $64,358.53" that husband contended wife owed him. Furthermore, husband asserted that the amount owed was "to be paid directly to [husband] from [wife]'s share of the net sellers' proceeds" and he requested "that the [Hedge Avenue] property be sold and the net sellers' proceeds be distributed as ordered in the judgment without any further delay."

When the parties' attorneys argued in correspondence at the end of June 2012 about the Ranchita Way reimbursement issue, husband's attorney identified the relevant provision in the judgment and referred wife's attorney to the accounting he had provided to her in March 2011. He stated that husband "made payments of $15,747.54 on the first mortgage and payments of $2,208.85 on the second mortgage" -- the same amounts shown in the accounting.

When he ultimately testified at the hearing in August 2012 regarding his claim for reimbursement on the posttrial Ranchita Way payments, husband testified directly from the March 2011 accounting, and that document was admitted into evidence. Thus, his testimony added nothing to the information his attorney had provided to wife's attorney almost a year and one-half earlier. In fact, the amount the court ultimately awarded husband on his Ranchita Way claims was the very amount he first identified in the accounting to wife in 2011. Under these circumstances, wife cannot legitimately complain that she was sandbagged and that the court deprived her of due process by allowing husband to claim reimbursement for his posttrial payments on the Ranchita Way property from the proceeds of the sale of the Hedge Avenue property.

To the extent wife also asserts she was deprived of due process when the trial court (Judge Lueras) denied her request to continue the evidentiary hearing "to permit discovery" because she was not allowed "sufficient time to obtain evidence" regarding husband's Ranchita Way claims, we reject this argument for one of the same reasons we rejected the previous argument. Wife had reason to know almost a year and one-half before the evidentiary hearing in August 2012 that husband was claiming the right to

26

reimbursement from the proceeds of sale of the Hedge Avenue property for certain, specific posttrial payments he made on the Ranchita Way property. Given this fact, wife cannot reasonably claim she was surprised by his claim or by the evidence he presented in support of it at the evidentiary hearing. No violation of due process has been shown by the denial of wife's belated request for a continuance.

## II

### *Accounting Of Pretrial Rental Income And Expenses*
### *From The Hedge Avenue Property*

Wife complains that the trial court (Judge Román) erred when it refused to address the issue of the pretrial rental income and expenses from the Hedge Avenue property because the court arbitrarily decided to limit the issues before it to posttrial issues. Wife has shown no error.

The following additional facts are relevant to this argument: When Judge Mize was making his oral ruling in August 2007, wife's attorney interrupted to ask for clarification about "the rent from the residential tenants" on the Hedge Avenue property. The court stated its assumption that "those were paid" -- i.e., that husband had shared the rents with wife -- but wife's attorney represented that they were not. The court stated its intent "to award half of those" and asked how much it was. Husband's attorney began explaining that one unit was rented presently "for 800 bucks," and that "one of them is rented about half the time and the one is rented all the time." After husband's attorney confirmed that "there were some costs" to the rentals, the court stated, "Get together because I'm not going to take the time now. Get together. Do an accounting of that and make it fair. [¶] . . . [¶] . . . Make it liberal and accept it." Husband's attorney confirmed that he would "provide an accounting," and the court said, "Because we're not going to come back on that because I do intent [wife] to get half of that. She's entitled to it, she's going to get it."

27

On August 17, 2007 -- after Judge Mize made his oral ruling -- husband's attorney sent a letter to wife's (former) attorney stating that husband had collected $32,200 in rent and had paid $14,400 in expenses from September 2005 through July 2007 and thus owed the community $17,800. Based on this accounting, husband's attorney stated that "a credit to [wife] of $8,900 will be reflected in the Judgment and proposed Statement of Decision I am preparing for your review."

In a status report that husband filed in advance of the meeting between the parties and Judge Mize scheduled for February 7, 2008, husband advised the court of the August 17 letter and asserted that husband had thus complied with the order to provide an accounting of the rental income from the residences on the Hedge Avenue property.

Ultimately, the judgment husband's attorney prepared contained the following provision on the subject: "There were also residential rents paid by tenants at Hedge Avenue. Petitioner and Respondent are to share equally in the net profit, if any, from the rental of the residential units at the property. Respondent and Petitioner are to collaborate and render an accounting which takes into account the income and expenses of the property and each party is entitled to one-half of the net proceeds, if any." So far as we can discern, however, the judgment did not contain the $8,900 credit husband's attorney said was going to be included, or any other credit relating to the residential rental income on the Hedge Avenue property.

Relying on the provision in the judgment requiring an accounting to be performed (and without referencing any of the evidence we have discovered that indicates the accounting *was* performed), wife contends it was error for the trial court to refuse to address the accounting issue at the evidentiary hearing in August 2011 based on the court's "arbitrary post-judgment limitation on the time frame for credits/debits" because that limitation "directly contradict[ed] the court's prior ruling just a month earlier to expand [husband]'s motion to 'all issues' of credit and debits without limitation."

28

There was no contradiction in the court's rulings. Before the evidentiary hearing, the court denied wife's motion to limit the credit and debit issues between the parties in connection with their claims to the Hedge Avenue property. The accounting provision now in issue, however, did not provide for either a credit or debit against the proceeds from the sale of the Hedge Avenue property. Instead, the provision provided for the rendering of an accounting between the parties regarding the pretrial income and expenses of the property and provided that each party was entitled to half of the net proceeds, if any, from the residential rentals on the property determined as a result of that accounting.

In her response to husband's motion to sell the Hedge Avenue property and divide the proceeds, wife did not raise any issue regarding the accounting provision in the judgment. So far as we can determine, the first time wife raised any issue regarding this provision was at the hearing on her motion to continue the trial. And at *no* time did wife raise the evidence that we have now discovered tending to show that the requested accounting *was* performed back in August 2007. Under these circumstances, we find no error in the court refusing to address the pretrial rental income and expenses from the Hedge Avenue property at the evidentiary hearing on husband's motion to sell the Hedge Avenue property and divide the net sales proceeds.

To the extent wife contends the trial court erroneously refused to address this issue because the court erred in finding that this court had already dealt with the issue in our previous opinion in the case, that contention goes nowhere also. What the trial court said about the subject was this: "[F]rom where I see the world, I'm simply saying, look, something happened up to August 2nd. It's not as clear as it should be. There was certainly an issue that she righteously had that she raised. The Court of Appeals [*sic*] appears to have dealt with it in a manner of speaking, but I'm not going to open that door. I'm only going to deal with my world post this judgment." And just before that, the trial court said this, in response to wife's attorney's question as to whether the court was

29

"ruling that this issue cannot be addressed by Judge Mize in the future": "That's a different issue. I'm not making that decision because that may be an issue that the Court of Appeals [*sic*] has already dealt with, all right. I'm just saying for purposes of this trial, I'm not seeing it as an issue for me to deliberate."

From these passages, it is clear that the trial court did not refuse to consider the issue of the pretrial rental income and expenses on the Hedge Avenue property because the trial court had determined that this court had, in fact, "already dealt" with the issue. At most, the trial court speculated that this court *might* have dealt with the issue. In the end, however, the trial court refused to address the issue because the court determined the issue was not properly before it. As we have explained, wife has shown no error in that determination.

### III

### *Clerical Errors*

Wife contends the trial court (Judge Román) erred in finding that it lacked jurisdiction to correct clerical errors in the judgment and in finding that correction of any clerical errors in the judgment was barred by the doctrine of res judicata.

On the latter point at least, wife is correct. The trial court cited *Avery v. Avery* (1970) 10 Cal.App.3d 525, 529 for the proposition that res judicata prevented wife from complaining of a clerical error in the judgment because the issue was "put to rest by the appellate court's affirmation of the judgment." The *Avery* case, however, does not support the trial court's conclusion.

In *Avery*, the plaintiff wife brought an action in California to establish as a California judgment a Missouri divorce decree that contained an award of alimony that husband had not paid. (*Avery v. Avery*, *supra*, 10 Cal.App.3d at p. 527.) Four days after commencing the California action, wife remarried in Missouri. (*Ibid.*) Thereafter, husband filed an answer and alleged wife's remarriage as an affirmative defense. (*Ibid.*) Nine months later, the parties' attorneys stipulated that wife was to have judgment

30

against husband for the arrears owed under the Missouri decree, and judgment was entered on that stipulation. (*Id.* at pp. 527-528.)

When husband failed to satisfy the California judgment, wife levied on his wages. (*Avery v. Avery*, *supra*, 10 Cal.App.3d at p. 528.) Husband moved to recall and quash the writ of execution based on wife's remarriage. (*Ibid.*) The court granted husband's motion. (*Ibid.*) On wife's appeal, the appellate court reversed because the judgment entered on the stipulation was "res judicata on the issue of termination of [husband]'s liability for payment of alimony in gross upon [wife]'s remarriage and [husband] is barred from relitigating the issue." (*Id.* at pp. 528-529.) The court explained that "[o]n [husband's] motion [to recall and quash the writ of execution] the issue [he] sought to have adjudicated [wa]s identical with that raised by him in the main action; by stipulating therein that judgment be rendered against him, knowing the existence and the importance of the fact of [wife's] remarriage, he consented to an adjudication adverse to him on that issue." (*Id.* at p. 529.)

The foregoing reasoning has no application here to wife's claim that the judgment contains clerical errors. There is no evidence in the record that before the evidentiary hearing in August 2012, wife ever raised a claim that there was a specific clerical error in the judgment. Certainly no issue of a clerical error was raised in wife's appeal from the judgment, nor could it have been, because wife would have had to first raise the issue in the trial court before she could raise it in this court.

It is true that in her response to husband's motion in June 2012 requesting that "all issues related to each party's request for credits/debts pertaining to their portion of the sale of the community property be heard at trial on August 16, 2012," wife asserted (almost as an aside) that the judgment, contained "[c]lerical [e]rrors" (underlying omitted) that needed to be corrected. At that time, however, wife did not attempt to identify any specific errors; instead, she stated that she would be filing a motion to correct the errors she had found but that motion was "not done yet."

31

Witkin explains that "[a] court of general jurisdiction has the power, after final judgment, and regardless of lapse of time, to correct clerical errors or misprisions in its records, whether made by the clerk, counsel, or the court itself, so that the records will conform to and speak the truth." (7 Witkin, Cal. Procedure (5th ed. 2008) *Judgment*, § 67, p. 603.) "The correction may be made even though an appeal has been taken and is pending. [Citations.] *And it may also be made after affirmance of the judgment on appeal*." (*Id.*, at pp. 603-604, italics added.)

Thus, the claim preclusion aspect of the doctrine of res judicata -- which bars a party from asserting " ' "a civil claim arising from a transaction with respect to which he has already prosecuted such a claim, whether or not the two claims wholly correspond to each other" ' " (*Benasra v. Mitchell Silberberg & Knupp* (2002) 96 Cal.App.4th 96, 104) -- does not operate to preclude a party from asserting a clerical error in a judgment just because the party could have made that assertion sometime earlier in the action. The *issue preclusion* aspect of res judicata -- which provides that " ' "a party ordinarily may not relitigate an issue that he fully and fairly litigated on a previous occasion" ' " (*ibid.*) -- would apply to an assertion of clerical error if that assertion had already been made and fully litigated. That did not happen here, however, because there is no indication that wife ever identified any specific alleged clerical errors in the judgment before she did so in the handwritten document she filed at the evidentiary hearing in August 2012.

While we agree with wife that the trial court erred in finding her assertion of clerical error barred by the doctrine of res judicata, that does not fully resolve the issue before us because ultimately we review the court's ruling, not its rationale. (See *Sackett v. Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2 [demurrer]; *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [summary judgment].) Thus, the question for us is whether the trial court committed prejudicial error by refusing to correct clerical errors wife identified in the judgment. For the reasons that follow, we find no such error.

As we have previously noted, wife's attorney claimed there were three "clerical errors" in the judgment, only two of which remain at issue on appeal. First, she asserted that the provision allowing husband to be reimbursed for posttrial payments he made on the mortgage on the Ranchita Way property was not part of the trial court's oral ruling. Second, she asserted that the court's oral ruling gave wife credit for $77,246 in community debts she paid, but that provision was omitted from the judgment and she received no credit for those payments.

Wife's claim of clerical error rests on the fundamental premise that Judge Mize intended the oral ruling he made on the record in August 2007 to be his final ruling, and that any variation between his oral ruling and the statement of decision he signed in April 2008 was unintended and should be corrected as "clerical error." We reject this premise.

Wife herself cites *Benway v. Benway* (1945) 69 Cal.App.2d 574, 580 for the proposition that "findings and conclusions, made and filed, constitute the decision of the court, and the entry of judgment thereon is a ministerial act to which the signature of the judge gives no additional validity." What wife fails to appreciate, however, is that the *Benway* court was specifically speaking of "[f]indings and conclusions made and filed pursuant to . . . a statute" such as "section 632 of the California Code of Civil Procedure." (*Ibid.*) Here, those "findings and conclusions" were those contained in the written *statement of decision* Judge Mize made and filed in April 2008, not those he made in his earlier oral ruling. (See Code Civ. Proc., § 632 ["In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. . . . [¶] The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise"].)

What Judge Mize stated orally on the record in August 2007 was a *tentative* decision. (See Cal. Rules of Court, rule 3.1590(a) ["On the trial of a question of fact by

33

the court, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk"].)  A tentative decision "does not constitute a judgment and is not binding on the court."  (*Id.*, rule 3.1590(b).)

Just because the statement of decision the court signed and filed is not entirely consistent with the earlier, tentative oral ruling does not mean there is a clerical error in the statement of decision subject to correction.  Because the tentative decision is not binding on the court, the court remains free to change any part of its ruling up until the statement of decision itself is signed and filed.  Thus, a variation between the tentative decision and the statement of decision may reflect a conscious choice by the court, rather than a clerical error.

Here, wife asserts that it is "[c]lear as a bell" that Judge Mize intended to enter a statement of decision that conformed precisely to his tentative decision because "[a]fter [wife]'s and [husband]'s attorneys had each drafted a statement of decision and a hearing was held related to such, the court chose to accept [husband]'s attorney's drafted statement of decision as 'a more accurate reflection of the Court's findings at the trial.' "

We agree that Judge Mize's statement in choosing to adopt the proposed statement of decision prepared by husband's attorney as the court's statement of decision -- that husband's proposal was "a more accurate reflection of the Court's findings at the trial" -- could be construed as supporting the proposition that Judge Mize intended to adhere to the terms of his tentative decision and did not intend to vary from it.  However, the court's ruling on the matter further reflects that the court conducted its "own review of [husband]'s Proposed [statement of decision]" and as a result of that review "found three items that needed correction or clarification."  None of those items had anything to do with the two supposed clerical "errors" wife has raised here.  Thus, wife would have us presume that while Judge Mize caught other errors in the proposed statement of decision, he overlooked the "errors" wife has now identified.  Wife would also have us conclude that the "errors" to which she points were clerical errors when (as Judge Mize noted in

34

his ruling) she did not file any objections to husband's proposed statement of decision and thus did not bring these supposed "errors" to the court's attention when she had the opportunity to do so *before* the statement of decision was finalized.

Under all of these circumstances, we decline to conclude that the variances wife has identified between Judge Mize's tentative oral decision and the statement of decision he decided to sign and file after reviewing husband's proposal and catching other items that needed to be corrected or clarified were "clerical errors" subject to correction. Accordingly, the trial court (Judge Román) did not err in denying wife's belated request to correct those "errors."

IV

*Finding Regarding The Hedge Avenue Property*

Wife complains that the trial court (Judge Román) "erroneously found, 'The property [Hedge Avenue] is comprised of two components:  (1) a rental unit (containing two homes), and (3) a truck parking component (containing a shop building).' " According to wife, "the Hedge Avenue property was composed of the two rental homes, and a four (4) acre yard, . . . upon which the parties operated a cement business, which included a truck parking component."

Other than identifying this supposed error, wife makes no effort to explain what impact the error had, if any, on the court's ruling dividing the proceeds from the sale of the Hedge Avenue property.  Absent such an explanation, wife has failed to show any *prejudicial* error by the trial court and thus has failed to carry her burden on appeal. "[E]rror alone does not warrant reversal.  'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.'  [Citation.]  ' " The burden is on the appellant, not alone to show error, but to show injury from the error." ' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)

35

Because wife failed to meet her burden of showing prejudicial error with relation to this issue, we need not discuss it further.

V

*Posttrial Rent On The Hedge Avenue Property*

Wife contends the trial court (Judge Román) erred in refusing to charge husband $3,000 per month for his continued use of the Hedge Avenue Property following the August 2007 trial.  We find no error.

As relevant here, the judgment provided as follows:  "[I]n a previous order, the parties agreed that the [*Watts*] charge for the Hedge Avenue property would be $3,000.00 per month payable to the community.  As of trial, Mr. Boblitt had used the Hedge property exclusively for twenty two months and, therefore, owed the community $66,000.00 'rent' for the property.  The Court reserves jurisdiction on updating these figures for equalization from the sale of the property."

Wife contends the final sentence above "contemplated an equalizing payment for [husband]'s continued use of the property post Judgment."  Thus, she contends husband should have been "charged 59 months rent at $3,000.00 per month for a total of $177,000.00, one-half of which would be [wife]'s equalizing share, or $88,500.00."

In our view, wife has not shown that by "reserv[ing] jurisdiction on updating these figures for equalization from the sale of the property," the court (Judge Mize) intended to hold husband responsible for $3,000 in *Watts* charges for every month he continued to use the Hedge Avenue property following the August 2007 trial.  As we have noted, the purpose of a *Watts* charge is to compensate the community for the reasonable value of one party's exclusive use of a community asset "between separation and trial."  (*In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 978.)  Wife points to no authority that authorizes a court to impose a continuing *Watts* charge on a party *post*trial.  In any event, regardless of whether a posttrial *Watts* charge is permissible, the entire premise for a *Watts* charge rests on one party's *exclusive* use of a community asset.  Wife

36

points to nothing to show that Judge Mize intended, let alone ordered, that husband was to have exclusive use of the Hedge Avenue property following the August 2007 trial. Judge Mize ordered that the property was to be sold and that wife (who held sole title to the property at that time) was to execute a deed in favor of both parties as tenants in common. Furthermore, at the evidentiary hearing husband testified that wife could have used the property (and in fact did use it by storing equipment there), but "[i]t was her own choice that she didn't come to the property." In her closing brief wife admitted that "[t]he parties did not have an agreement for future payment of rent post-judgment" by husband on the Hedge Avenue property.

Under all of these circumstances, we conclude that wife has shown no error in the trial court's refusal to order husband to pay posttrial *Watts* charges for his continued use of the Hedge Avenue property.

VI

*Unjust Enrichment*

In her closing brief, wife asked the trial court (Judge Román) "not to enforce th[e $2,707] equalizing payment in the judgment in equity, as a true and correct equalizing payment would have to include the $77,000.00 credit [wife] received in actual court's judgment, but was omitted from the propertizer by [husband]'s attorney." When the trial court did not expressly address this request in its tentative decision, wife asked the court to add to its decision a provision awarding her " 'the $77,000 in credits she was awarded on August 2, 2007 when the court rendered its judgment.' "[11] Wife asserts the trial court erred when it failed to address this "equity issue" in its statement of decision.

---

[11]    In her closing brief, wife had requested only that she be relieved of the $2,707 equalizing payment.

37

We find no error. Under Code of Civil Procedure section 632, a statement of decision need only "explain[] the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial." Wife has not shown that her request for "equitable" relief relating to the $77,246 in community debts she allegedly paid was a principal controverted issue *at trial*. Indeed, she appears to concede that she did not raise any such equitable claim until her closing brief. In any event, wife's request for "equitable" relief on this issue necessarily depends on her foundational argument that the $77,246 in community debts were erroneously, rather than intentionally, omitted from Judge Mize's statement of decision. We have concluded already that on the record before us wife has not shown that this omission was a clerical error. Having failed to make that showing, wife plainly was not entitled to any "equitable" relief and therefore the trial court's failure to address wife's request for this relief in its statement of decision was harmless.

To the extent wife contends husband was unjustly enriched by his attorney's omission of the $77,246 in community debts from the proposed statement of decision he submitted to Judge Mize and by the $17,956.39 husband recovered in reimbursement for his posttrial payments on the Ranchita Way property because of the provision husband's attorney added to the proposed statement of decision on that topic, we find this contention to be nothing more than a repackaging of her "clerical error" argument that we have rejected already. Wife has not shown that Judge Mize did not intentionally omit the community debts from the final statement of decision and did not intentionally include the provision regarding posttrial reimbursement on the Ranchita Way property. In the absence of any such showing, no showing of unjust enrichment appears.

## DISPOSITION

The October 12, 2012 order is affirmed.  Husband shall recover his costs on appeal (if any).  (Cal. Rules of Court, rule 8.278(a)(2).)


                                            ROBIE           , Acting P. J.



We concur:



      BUTZ           , J.



      HOCH           , J.


39