COURT OF APPEALS
DECISION
DATED AND FILED

March 26, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2347**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022FA603

**IN COURT OF APPEALS
DISTRICT IV**

---

IN RE THE MARRIAGE OF:

MPOLI N. SIMWANZA-JOHNSON,

    PETITIONER-APPELLANT,

 V.

MATTHEW CHRISTOPHER JOHNSON,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: JACOB B. FROST, Judge. *Final order affirmed; nonfinal order reversed in part and remanded with directions*.

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Mpoli Simwanza-Johnson and Matthew Johnson were divorced in May 2023 and shared physical placement of their two minor children pursuant to the judgment of divorce in the Dane County circuit court.[1] In June 2024, Mpoli filed a motion in the circuit court seeking permission to relocate from Wisconsin to Colorado with the minor children. Following an evidentiary hearing, the court issued a temporary order allowing Mpoli to relocate to Colorado with the children and awarding her primary placement pending the resolution of her motion. The court also entered the following temporary orders to cover the time period during which the relocation motion was pending: an order requiring Mpoli to pay for the travel expenses that Matt incurred to exercise placement in Colorado; an order temporarily setting Matt's child support obligation at $0 while Mpoli had primary placement of the children; and an order requiring Mpoli to pay for the children's variable costs.

¶2 Matt initially objected to Mpoli's relocation motion, but he ultimately withdrew his objection after informing the circuit court that he would move near Mpoli and the children in Colorado. The court granted Mpoli's relocation motion. The court further ruled that, as of the date on which it was anticipated that Matt would be ready, after his move, to resume the shared placement schedule set forth in the divorce judgment ("the original placement schedule"), the temporary orders would be vacated and the court would reinstate the original placement schedule. Separately, during the course of the proceedings, the court also imposed a monetary sanction against Mpoli after determining that her opposition to discovery requested by Matt was not substantially justified.

---

[1] Because of the similarities between the parties' surnames, for clarity, we refer to them by their first names after this point. We refer to Matthew as "Matt," consistent with his briefing.

¶3      On appeal, Mpoli argues that the circuit court erred in several respects.  First, she argues that the court impermissibly reinstated the original placement schedule without first holding a final evidentiary hearing at which the court would consider whether the original placement schedule was in the children's best interests.  Relatedly, she argues that the court could not vacate, as of a set date in the near future, its temporary orders and reinstate the original placement schedule.  Mpoli also argues that the court erroneously exercised its discretion when it ordered that she pay for Matt's placement-related travel expenses, temporarily set Matt's child support obligation at $0, and ordered that she pay the children's variable costs, all while the temporary placement schedule was in effect after she relocated and before Matt moved to Colorado.  Mpoli also argues that the court erroneously exercised its discretion when it imposed a monetary sanction against her for a discovery violation.

¶4      We affirm the circuit court's order that reinstates the original placement schedule and vacates the court's temporary orders following Matt's withdrawal of his objection to Mpoli's relocation motion and effective upon Matt's own relocation to Colorado.  We further affirm the court's temporary orders, with one exception: we reverse the part of the court's September 24, 2024 order requiring that Mpoli pay Matt's placement-related travel expenses, and we remand with directions that the circuit court enter an order, consistent with this opinion, relieving Mpoli from having to pay Matt's placement-related travel expenses.  We also affirm the court's discovery sanctions against Mpoli.[2]

---

[2] As we explain in greater detail below, we have jurisdiction to review the nonfinal orders that Mpoli challenges on appeal as part of Mpoli's appeal from the final order on Mpoli's relocation motion.

*I. Order granting Mpoli's relocation motion, vacating the temporary placement schedule, and reinstating the original placement schedule*

¶5      Mpoli argues that the circuit court erred in several respects when, as part of its final order granting Mpoli's relocation motion, it vacated its temporary order regarding the placement schedule and reinstated the original placement schedule.  We begin with a brief overview of the applicable statute, WIS. STAT. § 767.481, before discussing the relevant facts and then turning to our analysis.[3]

¶6      WISCONSIN STAT. § 767.481 applies "if the [circuit] court grants any periods of physical placement with a child to both parents and one parent intends to relocate and reside with the child 100 miles or more from the other parent." The statute further provides that "the parent who intends to relocate and reside with the child shall file a motion with the court seeking permission for the child's relocation."  § 767.481(1)(a).  Pertinent here, a motion to relocate must include, "[i]f applicable, a proposed new placement schedule," and "[t]he proposed responsibility and allocation of costs for each parent for transportation of the child between the parties under any proposed new placement schedule."  § 767.481(1)(b)1.d., e.

¶7      Within 30 days after a motion to relocate is filed, the circuit court must hold an "initial hearing."[4]   WIS. STAT. § 767.481(2)(a).  At the initial hearing, if the nonfiling parent does not object to the proposed relocation plan, the court shall approve the plan unless the court finds that it is not in the best interest

---

[3]  All references to the Wisconsin Statutes are to the 2023-24 version.

[4]  In this context, "circuit court" also includes a circuit court commissioner.  *See* WIS. STAT. § 767.001(b).  Here, the initial hearing was held by a court commissioner, whose determinations were later upheld by the circuit court.

of the child. § 767.481(2)(b). If the nonfiling parent does object, the objecting parent must submit in writing the basis for the parent's objection and the court must set the matter for a final hearing. § 767.481(2)(c)1., 4. "At the initial hearing, or at any time after the initial hearing but before the final hearing, the court may issue a temporary order under [WIS. STAT. §] 767.225(1)(bm) to allow the parent proposing the relocation to relocate with the child if the court finds that the relocation is in the child's immediate best interest…." § 767.481(3)(a); *see also* § 767.225(1)(bm) (a circuit court may issue a temporary order "[a]llowing a party to relocate and reside with a child pending a final hearing under [§] 767.481(3)").

¶8 When the nonfiling parent has objected, the circuit court must, within 60 days of the initial hearing, decide the matter at a final hearing. WIS. STAT. § 767.481(2)(c)4., (4). Whether a relocation motion is granted, and the standards for deciding such a motion, depend on whether "the proposed relocation only minimally changes or affects the current placement schedule or does not affect or change the current placement schedule." *See* § 767.481(4)(a), (b). If the proposed relocation no more than minimally changes or affects the current placement schedule, "the court shall approve the proposed relocation, set a new placement schedule if appropriate, and allocate the costs of and responsibility for transportation of the child between the parties under the new placement schedule." § 767.481(4)(a). If the proposed relocation schedule would more than minimally change or affect the current placement schedule, the court, in determining whether to approve the proposed relocation and a new placement schedule, must consider the factors set forth in § 767.481(4)(b), including those in WIS. STAT. § 767.41(5) regarding the child's best interest ("the best interest factors"). § 767.481(4)(b);

5

*see also* § 767.481(4)(d) (requiring that the court "shall decide all contested relocation motions and all related motions ... in the best interest of the child").

¶9      Here, Mpoli filed her motion to relocate with the children to Colorado after she was offered a new job there.  Mpoli's motion included a proposed new placement schedule that would award her primary placement. Before Mpoli's relocation, Matt had placement of the children from Sunday afternoon until Wednesday morning each week, and Mpoli had placement all other times and on holidays.  Mpoli's motion to relocate proposed that, after her relocation, Matt have placement of the children only over Thanksgiving, over the winter and spring school breaks, and during portions of the summer.  Mpoli also moved for a temporary order under WIS. STAT. §§ 767.481(3)(a) and 767.225(1)(bm) that would allow her to relocate with the children pending the final hearing.

¶10      Matt initially objected to the proposed relocation.  Along with his objection, he moved to modify placement in the event that the circuit court approved Mpoli's motion to relocate.  Under Matt's proposed placement schedule, he would have primary placement of the children in Wisconsin after Mpoli's relocation.

¶11      At an initial hearing, a court commissioner granted Mpoli's motion to relocate pending a final hearing.  Matt sought circuit court de novo review of the commissioner's order pursuant to WIS. STAT. § 767.481(3)(b).  *See* § 767.481(3)(b) ("If a court commissioner makes a determination, order, or ruling regarding relocation pending the final hearing under par. (a), either party may seek a review by hearing de novo under [WIS. STAT. §] 757.69(8).").  Following the de novo initial hearing, the circuit court issued a temporary order allowing Mpoli to

relocate with the children pending a final hearing. The court also issued a temporary order that awarded Matt placement for four days in October and the week of Thanksgiving, to take place either in Wisconsin or Colorado, at Matt's choosing. The court additionally granted Matt video visits with the children.

¶12 As a result of the circuit court's temporary order allowing Mpoli to relocate pending the final hearing, Matt informed the court that he also intended to move to Colorado, near Mpoli and the children. He further proposed that, after his move, the original placement schedule should be reinstated.

¶13 At a motion hearing on October 30, 2024, Matt's counsel provided details regarding Matt's moving plans and the circuit court addressed a number of pending motions. This included Mpoli's relocation motion and Matt's request to reinstate the original placement schedule after he moved to Colorado. The court concluded that, pursuant to WIS. STAT. § 767.481(4)(a), after Matt filed documents withdrawing his objection to Mpoli's relocation motion and informing the court when a moving truck would be available for Matt's move to Colorado and when his new home would be ready for Matt to resume placement, the original placement schedule would be reinstated, effective on the date that Matt's Colorado home was ready for Matt to resume placement. The court determined that, because the relocation did not affect the original placement schedule, under § 767.481(4)(a), the court was required to approve the relocation and did not need to hold a further hearing at which it would consider the best interest factors from WIS. STAT. § 767.41(5).

¶14 Further, in response to Mpoli's statements about wanting to modify placement, the circuit court informed Mpoli that she would have to file a motion separate from her motion to relocate. The court stated that the relocation statute

could not be used to circumvent the heightened standard from WIS. STAT. § 767.451, which applies to motions to modify placement orders regarding physical placement when the original placement schedule is less than two years old, as was the case here. *See* § 767.451(1)(a) (providing that an order regarding physical placement generally may not be modified within two years of being entered unless the moving party "shows by substantial evidence that the modification is necessary because the current custodial conditions are physically or emotionally harmful to the best interest of the child"). The guardian ad litem who had been appointed to represent the children's best interests agreed with the court's position and analysis.[5]

¶15 Consistent with Matt's representations at the October 30 hearing, on November 6 and 7, 2024, Matt filed documents withdrawing his objection to Mpoli's motion to relocate, confirming that he would move to Colorado on November 16, providing a lease for his new residence in Colorado, and stating that he would be prepared, effective November 24, for the circuit court to reinstate the original placement schedule. On November 14, the court approved Mpoli's relocation, vacated the temporary placement order, and reinstated the original placement schedule, effective November 24.

¶16 Mpoli challenges the circuit court's order vacating the temporary placement order and reinstating the original placement schedule on two grounds. First, she argues that, pursuant to WIS. STAT. § 767.481, the court was required to hold a final hearing at which it would consider whether it was in the children's

---

[5] The same guardian ad litem from the parties' recent divorce proceedings was reappointed in the relocation proceedings.

best interests to reinstate the original placement schedule. Second, she argues that the order was an illegal prospective order. We address, and reject, each argument in turn.

### A. WISCONSIN STAT. § 767.481: final hearing and children's best interests

¶17 Mpoli's arguments largely turn on the interpretation and application of WIS. STAT. § 767.481, which are questions of law that we review independently. *See Wisconsin Prop. Taxpayers, Inc. v. Town of Buchanan*, 2023 WI 58, ¶9, 408 Wis. 2d 287, 992 N.W.2d 100.

¶18 Mpoli argues that the circuit court was required to hold a final hearing at which the court would have been required to determine whether reinstating the original placement schedule was in the children's best interests pursuant to WIS. STAT. §§ 767.481(4)(b) and 767.41(5). She argues that the court erred in relying on § 767.481(4)(a) to conclude that, because the proposed relocation did not affect the original placement schedule, no such final hearing was required. We conclude that the court correctly interpreted and applied the statute.[6]

---

[6] Although not addressed by the circuit court or parties, we observe that there may be some question as to whether the relocation statute, WIS. STAT. § 767.481, continued to apply here once Matt moved to Colorado, within 100 miles of Mpoli. *See* § 767.481(1)(a) ("[I]f … one parent intends to relocate and reside with the child *100 miles or more from the other parent*, the parent who intends to relocate and reside with the child shall file a motion with the court seeking permission for the child's relocation." (emphasis added)). However, because this issue was not raised either before the circuit court or on appeal, we do not further address it, except to repeat an observation made in our December 2, 2024 order denying Mpoli's motion for a stay of the circuit court's order resuming the original placement schedule. That order stated, "In practical effect, the circuit court appears to have arrived at the result that would likely occur if the parties had both relocated to Colorado at the same time: no relocation order would be appropriate because the children are not being moved more than one hundred miles from either parent, and as a result the placement terms of the existing divorce judgment would continue to control in the new location."

¶19　As stated, the manner in which a circuit court must decide a relocation motion depends on whether "the proposed relocation only minimally changes or affects the current placement schedule or does not affect or change the current placement schedule." WIS. STAT. § 767.481(4)(a). Here, the circuit court determined that Mpoli's proposed relocation would not affect the original placement schedule because Matt was also relocating to Colorado, near the children. In other words, with both parties living near the children in Colorado, the parties were in the same placement situation that they had been in while residing in Wisconsin.[7] Because the court concluded that the original placement schedule—which, as we explain below, the court correctly treated as the "current placement schedule" under § 767.481(4)(a)—would not be affected under § 767.481(4)(a), the court was required to approve Mpoli's relocation, and there was no requirement that the court hold an additional hearing on Mpoli's motion to relocate and to consider the children's best interests at that hearing.[8] Accordingly, we conclude that the court correctly interpreted and applied § 767.481 to the circumstances here. We reject Mpoli's arguments to the contrary.

¶20　Mpoli argues that, instead of applying WIS. STAT. § 767.481(4)(a) to these circumstances, the circuit court should have applied § 767.481(4)(b).

---

[7] Although the circuit court did not explicitly say as much, it appears to have implicitly relied on findings that Matt had obtained suitable housing and that he intended to find employment that was compatible with the placement schedule under the parties' judgment of divorce. The court stated in its final order that "Neither side presented any minor adjustments [that] the relocation requires to the [Judgment of Divorce's] orders on placement."

[8] Our conclusion on this point is consistent with the fact that the circuit court was required to consider the children's best interests when determining the original placement schedule set forth in the judgment of divorce. *See* WIS. STAT. § 767.41(5)(am) (stating that the best interest factors are to be considered "in determining legal custody and periods of physical placement").

Paragraph (4)(b) applies "[i]n cases other than that specified in par. (a)," and requires the court, in deciding whether to approve the proposed relocation and a new placement schedule, to consider the best interest factors from WIS. STAT. § 767.41(5). In support of this argument, Mpoli offers three separate rationales, which we address and reject in turn.

¶21    First, Mpoli argues that, once a circuit court has issued a temporary order allowing a parent to relocate pending a final hearing, the court lacks discretion not to hold a final hearing absent a stipulation from the parties under WIS. STAT. § 767.481(5).[9] As support, Mpoli contends that § 767.481(4) states how the court must decide the matter "[a]t the final hearing." Thus, Mpoli's argument continues, the court could not rely on § 767.481(4)(a) to decide the relocation motion because the court did not hold a final hearing.

---

[9] WISCONSIN STAT. § 767.481(5) provides:

> At any time after a motion [to relocate] is filed …, if the parties agree that one parent may relocate more than 100 miles away from the other parent, the parties may file a stipulation with the [circuit] court that specifies that neither parent has any objection to the planned relocation and that sets out any agreed upon modification to legal custody or periods of physical placement, including responsibility and costs for transportation of the child between the parties under a proposed new placement schedule. The court shall incorporate the terms of the stipulation into an order for the relocation or a revised order of legal custody or physical placement, as appropriate, unless the court finds that the modification is not in the best interest of the child.

We note that this provision applies only "if the parties agree that one parent may relocate more than 100 miles away from the other parent." Here, the parties ultimately agreed that Mpoli could relocate, but with Matt's move to the same area, this relocation would not be more than 100 miles away from Matt.

¶22      As previously noted, following the initial hearing and the circuit court's temporary order permitting relocation, the court held a hearing on October 30, 2024, to address various motions prior to the final hearing that had been scheduled for December 2024. At the October 30 hearing, Matt made clear that he would also be relocating to Colorado and that he would be withdrawing his objection to Mpoli's relocation motion. After extensive discussion at the hearing on the topic, the court determined that WIS. STAT. § 767.481(4)(a) applied based on the updates regarding Matt's plans that the court received at the hearing. To repeat, § 767.481(4)(a) states that "[i]f the proposed relocation only minimally changes or affects the current placement schedule or does not affect or change the current placement schedule, the court shall approve the proposed relocation [and] set a new placement schedule if appropriate." Given that the primary purpose of a final hearing would have been to decide the relocation motion and that Matt no longer opposed the motion, and given the court's conclusion that Mpoli's relocation did not affect the original placement schedule, the court correctly concluded that it was required to grant Mpoli's motion and that no further hearing was required. As the court noted in its final order on relocation, once it was clear that Matt was also moving, "[n]o valid reason was presented why [the original placement schedule] could no longer control."

¶23      To be sure, Mpoli argued before the circuit court and appears to maintain on appeal that a final hearing was necessary because the court should have received evidence regarding Matt's housing and employment following his relocation. However, as the court reasoned, if Mpoli wished to modify the original placement schedule based on concerns about Matt's housing or employment in Colorado, then the proper mechanism to do so would have been WIS. STAT. § 767.451, under which, because the original placement schedule was less than

12

two years old, Mpoli would have been required to show "by substantial evidence that the modification is necessary because the current custodial conditions are physically or emotionally harmful to the best interest of the child." § 767.451. As the court concluded, it would circumvent the heightened standard from § 767.451 to allow Mpoli to attempt to use the relocation statute as a vehicle for modifying the original placement schedule based on concerns about Matt's housing or employment once the parties were living near each other in Colorado. Because the court had a reasonable basis to conclude at the October 30 hearing that Mpoli's relocation would not affect the original placement schedule, no further hearing was required.

¶24     Second, and relatedly, Mpoli argues that the circuit court made clearly erroneous findings of fact to support its ruling under WIS. STAT. § 767.481(4)(a) on Mpoli's relocation motion because the court's findings were based solely on legal arguments and representations made by Matt's counsel, and not based on sworn statements by Matt. Mpoli argues that the submission of evidence is "plainly contemplated" by the reference to a "final hearing" in § 767.481(4). However, this argument assumes that an additional hearing was required, a contention we have rejected. Moreover, even if we assume that the court should have relied on testimony or sworn statements from Matt himself regarding his relocation plans instead of relying on representations from Matt's counsel, we conclude that Mpoli forfeited this objection by failing to raise it before the circuit court. "It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not … generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. Here, as Matt points out, at the October 30 hearing, Mpoli did not object to Matt's relocation plans being conveyed to the court by his

counsel instead of through Matt's testimony.  This is yet another basis to reject Mpoli's challenge on appeal to the court's reliance on counsel's representations. *See Vollmer v. Luety*, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990) ("[R]equiring objections at trial allows the trial judge an opportunity to correct or to avoid errors, thereby resulting in efficient judicial administration and eliminating the need for an appeal.").[10]

¶25     Third, Mpoli argues that WIS. STAT. § 767.481(4)(a) does not apply because the relocation would more than minimally change or affect the current placement schedule.  *See* § 767.481(4)(a) ("If the proposed relocation only minimally changes or affects the current placement schedule or does not affect or change the current placement schedule, the court shall approve the proposed relocation[.]").  According to Mpoli, that is because "the current placement schedule" for purposes of paragraph (4)(a) was not the original placement schedule, but rather the placement schedule established in the temporary orders that the circuit court entered after granting Mpoli's motion to relocate pending the final hearing.

¶26     Contrary to Mpoli's contention, we conclude that the circuit court properly determined that "the current placement schedule" for purposes of WIS. STAT. § 767.481(4)(a) refers to the placement schedule *as it exists at the time that the relocation motion is filed*—here, that was the original placement schedule from the judgment of divorce.  In support of this conclusion, we note that a temporary order regarding placement will not always be necessary in relocation proceedings.

---

[10] We also observe that Mpoli does not argue that counsel's representations to the circuit court about Matt's relocation plans were not true, nor does she direct us to record evidence that would raise such an issue.

For example, here, the temporary order regarding placement was required because, over Matt's initial objection, the court allowed Mpoli to relocate with the children pending the final hearing. But when the parent seeking permission to relocate does not relocate before a final hearing, a temporary order regarding placement may not be necessary. Thus, under Mpoli's interpretation, the effect of paragraph (4)(a) would vary depending on whether the court had issued a temporary placement order. We discern no indication in the statute that this is the legislative intent.

¶27 Rather, as we have interpreted WIS. STAT. § 767.481(4)(a), when the proposed relocation at most only minimally changes or affects the placement schedule as it exists at the time that the motion to relocate is filed, then the circuit court is required to approve the relocation. This makes sense because if the pre-relocation placement schedule is at most only minimally changed or affected by the proposed relocation, there is no reason to deny the relocation motion, and thus no need for a final hearing on the motion. It would not serve any discernible purpose to make the approval of a relocation plan under paragraph (4)(a) contingent on whether the plan changes or affects placement under a temporary order. Moreover, such a contingency would ascribe undue significance to the temporary order for purposes of determining whether the relocation should be approved and, as Matt points out, run counter to our case law addressing related arguments about temporary orders in other contexts. *See Pfeifer v. Pfeifer*, 62 Wis. 2d 417, 426, 215 N.W.2d 419 (1974) ("We see neither reason nor merit to upgrading an order for temporary custody, pending trial, into some near-permanent determination of the rights of the parents and the best interests of the children."); *see also Kuesel v. Kuesel*, 74 Wis. 2d 636, 639, 247 N.W.2d 72 (1976) (rejecting the contention "that respondent had the burden to show a change of

circumstances to permit an award of custody contrary to the order for temporary custody").

¶28 Accordingly, we reject Mpoli's arguments that the circuit court erred in relying on WIS. STAT. § 767.481(4)(a) rather than § 767.481(4)(b). It follows that the court was not required, pursuant to § 767.481(4)(b), to hold a final hearing at which it would consider the best interest factors from WIS. STAT. § 767.41(5).

¶29 Separately, Mpoli argues that Matt was prohibited from withdrawing his objection to the relocation. Specifically, she asserts that "[n]othing in [WIS. STAT. §] 767.481 authorizes a party to withdraw an objection to a relocation motion after the initial hearing, let alone after a temporary relocation order has been entered, without leave of the court." The only authority that Mpoli cites in support of this proposition is WIS. STAT. § 805.04, which governs the voluntary dismissal of actions, an entirely different context. Mpoli does not explain, nor do we discern, how § 805.04 supports her argument. Furthermore, even if leave of the court was indeed necessary, the court's November 14, 2024 final order implicitly grants that leave. For these reasons, we reject Mpoli's argument that Matt was prohibited from withdrawing his objection to Mpoli's relocation.

¶30 Mpoli further argues that, even if Matt was permitted to withdraw his objection, then WIS. STAT. § 767.481(4)(d) would apply. Paragraph (4)(d) states, in pertinent part, "The court shall decide all contested relocation motions and all related motions for modification of legal custody or physical placement in the best interest of the child." Mpoli contends that Matt's withdrawal of his objection to the relocation was a "related motion[] for modification of … physical placement" under paragraph (4)(d). She further argues that, "[b]ecause a motion to vacate the temporary relocation orders and change the placement schedule from

16

primary placement to shared placement is plainly a relocation-related motion for modification of physical placement, the court was required to consider whether that change is in the best interests of the children."

¶31 We reject this argument for at least the following reasons. First, the language from WIS. STAT. § 767.481(4)(d) on which Mpoli relies refers to motions to modify placement that are related to "contested relocation motions," but here, after Matt withdrew his objection, the relocation motion was no longer contested. Second, we reject Mpoli's characterization of Matt's withdrawal of his objection to the relocation as a motion to modify placement. As stated above, a relocation-related motion to modify placement is a motion to modify the placement *as it existed when the motion to relocate was filed*, and not a motion to modify the placement as set forth in a temporary order. Here, any motion to modify placement related to the relocation motion would be a motion to modify the original placement schedule. Third, Matt's withdrawal of his objection to Mpoli's relocation was accompanied by his express request to reinstate the placement schedule in the divorce judgment; by its terms, this request sought reinstatement, not modification, of the placement schedule.

¶32 In sum, we conclude that the circuit court properly interpreted and applied WIS. STAT. § 767.481, and we reject Mpoli's arguments to the contrary.

### B. Prospective vacatur

¶33 We next turn to Mpoli's argument that the circuit court erred because its final order vacating the temporary order regarding placement and reinstating the original placement schedule was an improper "prospective" order. We reject this argument because the only authority that Mpoli cites for her position is readily distinguishable.

17

¶34 In support of her argument, Mpoli cites cases stating that a circuit court cannot prospectively order a modification to custody or physical placement, contingent on a future event. *See Culligan v. Cindric*, 2003 WI App 180, ¶13, 266 Wis. 2d 534, 669 N.W.2d 175 ("[A] circuit court lacks the statutory authority at divorce to order a change of physical placement that is both prospective and contingent on the occurrence of some anticipated event."); *Pollock v. Pollock*, 273 Wis. 233, 246, 77 N.W.2d 485 (1956) ("While it is within the power of a court to change the custody of a child, nevertheless, a decree fixing custody is final on the condition existing when the decree is rendered, and should not be changed afterward unless an altered condition arises subsequent to the decree."); *Koeller v. Koeller*, 195 Wis. 2d 660, 668, 536 N.W.2d 216 (Ct. App. 1995) ("[W]e see no authorization in the law for a change of custody in the future based on circumstances that might not exist when the order is to take effect."); *Groh v. Groh*, 110 Wis. 2d 117, 119, 327 N.W.2d 655 (1983) (concluding that the circuit court lacked authority to order the mother to move as a condition of retaining custody).

¶35 This case law is materially distinguishable from the situation here. The circuit court order that Mpoli challenges was an order stating a date on which the court's earlier *temporary* orders would cease to be in effect. In contrast, none of the cases that Mpoli cites address whether a court may vacate *temporary* orders as of a specified time in the near future. Instead, the shared analysis in those cases focuses on whether the relevant statutes concerning placement and custody modifications authorized the types of orders at issue in those cases. *See Koeller*, 195 Wis. 2d at 665-66 (observing that the court's authority was confined to those express and incidental powers conferred by statute and then analyzing the relevant statutes); *Groh*, 110 Wis. 2d at 123-26 (same). Accordingly, we reject Mpoli's

argument that the court lacked authority to prospectively vacate its temporary orders.[11]

## II. *The circuit court's additional temporary orders*

¶36    Mpoli challenges the circuit court's additional temporary orders addressing the period after Mpoli relocated and until the court reinstated the original placement schedule in the divorce judgment.  As discussed, these orders: required her to pay for Matt's placement-related travel expenses; set Matt's child support obligation at $0; and established that Matt was not responsible for any of the children's variable costs.  We agree with Mpoli that the court erroneously exercised its discretion in ordering that Mpoli pay for Matt's placement-related travel expenses, but we conclude that the court did not otherwise erroneously exercise its discretion.

¶37    Before addressing Mpoli's challenges to each of these temporary orders, we first briefly explain why we reject a jurisdictional argument that Matt offers in response.  Matt argues that the temporary orders that Mpoli challenges are not appealable because they are not final orders.  In support of this argument, he cites WIS. STAT. § 808.03(1), which states, in relevant part, "A final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law."  Matt contends that,

---

[11] Mpoli also asserts that the circuit court "should have granted [Mpoli's] motion to stay the proceedings and change the venue to Larimer County[, Colorado,] to consider the parties' circumstances following [Matt's] move."  Mpoli does not develop this argument or support it with any legal authority, and we accordingly reject it.  *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

because the temporary orders at issue did not dispose of the entire matter in litigation as to one or more of the parties, and because they were subject to further review and revision, they are not final and thus not appealable.

¶38   In response, Mpoli argues that the circuit court's temporary orders are reviewable pursuant to WIS. STAT. RULE 809.10(4), which states, "An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon."   Mpoli points out that Matt does not dispute that the court's order approving Mpoli's relocation is a final order, or that the court's temporary orders are favorable to Matt and were not previously appealed and ruled on.  We agree, and accordingly reject Matt's jurisdictional argument.

## A. Placement-related travel expenses

¶39   After the circuit court granted Mpoli's motion to relocate pending a final hearing, the court ordered Mpoli to pay for the travel expenses that Matt would incur in exercising his placement with the children after their move to Colorado.  Mpoli argues that the court erroneously exercised its discretion when it did so, by incorrectly interpreting and applying the applicable statute.   We conclude that this was an erroneous exercise of discretion.

¶40   "An exercise of discretion based on a mistaken view of the law is an erroneous exercise of discretion."  *Cook v. Cook*, 208 Wis. 2d 166, 171-72, 560 N.W.2d 246 (1997).  We review independently whether a circuit court applied a proper legal standard. *Id.* at 172.

20

¶41    By way of additional background, at the initial hearing, after the circuit court granted Mpoli's motion to relocate pending the final hearing and awarded Matt placement for four days in October, to take place either in Madison or Colorado at Matt's choosing, the court invited briefing as to who should bear the travel costs for either the children or Matt related to placement.  Matt elected to exercise placement in Colorado, and requested that Mpoli pay for his travel expenses.  The court granted that motion, stating:

> After review of the parties' finances, and considering the difficult financial spot [Mpoli]'s choices created for [Matt], I order her to pay 100% of the cost for [Matt] to exercise placement in October, and in November if he has not already relocated by November.  He is stuck in a lease he needs to break, he reasonably sought additional housing in the best interest[s] of the children in hopes of his keeping the children in Wisconsin, and now must also break or pay that lease.  His actions were all reasonable and affected by [Mpoli]'s unilateral choice to move for work.  He now must seek new employment, a new home, and leave the community and connections he has in Wisconsin, all in a rush and all motivated by being with his kids.  [Mpoli] left a great paying job for a better title and more pay, nothing else.  She took the kids from their school and home and father for a better title and more pay.  She can afford to pay the cost for [Matt]'s placement and shall do so.  [Matt] shall purchase his tickets and accommodations and submit receipts to [Mpoli].  She shall reimburse those receipts within 7 calendar days.

¶42    Mpoli submitted a letter to the circuit court asking the court to reconsider this ruling based on, among other things, WIS. STAT. § 767.481, which states that the costs "for transportation *of the child*" may be allocated between the parties.  *See* § 767.481(1)(b)1.e., (4)(a) (emphasis added).  Mpoli argued that, given this statutory language, the court was not authorized to issue an order allocating to her the cost of *Matt's* placement-related travel.  The court denied Mpoli's motion for reconsideration based on its interpretation of § 767.481.

21

¶43    Mpoli argues that WIS. STAT. § 767.481 does not authorize a circuit court to allocate the placement-related travel expenses of one parent to the other. Matt does not respond to this particular statutory argument on appeal, which we may treat as a concession. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded). Further, we conclude that § 767.481 does not authorize the court to require that Mpoli pay for Matt's placement-related travel expenses and, therefore, the court erred as a matter of law in imposing that requirement. *See Cook*, 208 Wis. 2d at 171-72. The court did not rely on any authority other than § 767.481 to require Mpoli to pay Matt's placement-related travel expenses, nor does Matt argue that the order was authorized by any other authority.

¶44    As Mpoli notes, WIS. STAT. § 767.481(4)(a) authorizes a circuit court to "allocate the costs of and responsibility for *transportation of the child* between the parties." (Emphasis added.) This authorizes the court to order that one parent or the other or both pay the costs related to the child's travel pursuant to a placement schedule. However, under the facts of this case, in which the children were not transported for Matt to exercise placement, Matt's travel costs were not "costs … for transportation of the child." Although the court noted that Matt's decision to travel to Colorado made it easier and less traumatic for the children and maximized Matt's time with them, courts may not disregard unambiguous statutory language. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶39, 44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶45    Because WIS. STAT. § 767.481 did not authorize the circuit court to require that Mpoli pay Matt's placement-related travel expenses, the court erroneously exercised its discretion when it did so.

22

## B. Child support

¶46    Mpoli challenges the circuit court's temporary order regarding child support.    Generally, pursuant to WIS. STAT. § 767.511(1j), a court, when determining child support, must adhere to the standard child support guidelines promulgated by the Department of Children and Families (which we refer to at times as "the child support guidelines," or simply "the guidelines").    However, pursuant to § 767.511(1m), "[t]he court may deviate from the percentage standard if it finds by the greater weight of the credible evidence that the use of the standard would be unfair to the child or the party requesting deviation." *Ladwig v. Ladwig*, 2010 WI App 78, ¶23, 325 Wis. 2d 497, 785 N.W.2d 664; *see also* § 767.511(1m). "The party seeking a deviation from the established child support standards has the burden of proving that application of the standards in that case is unfair to the party or the child." *Winkler v. Winkler*, 2005 WI App 100, ¶27, 282 Wis. 2d 746, 699 N.W.2d 652.    Section 767.511(1m) lists a number of factors that the court may consider in determining whether deviating from the child support guidelines is appropriate.

¶47    Here, prior to Mpoli's relocation, Mpoli paid Matt $177.05 in monthly child support for both children, which included a downward deviation from the guidelines of $154.95 for Matt's share of the health insurance premiums attributable to the children's coverage on Mpoli's employer-sponsored plan. Mpoli moved to modify child support shortly after she relocated with the children to Colorado based on her having primary placement of the children.    Specifically, she sought to have Matt pay guideline support with an upward deviation of $171.61 as a contribution for health insurance.    In response to Mpoli's motion, Matt argued that the circuit court should deviate from the child support guidelines and decline to order that he pay child support to Mpoli.

¶48     The circuit court determined that it was appropriate to modify child support because, after Mpoli's relocation to Colorado with the children, she had primary placement of the children, and the child support order that had been in effect was based on the parties having shared placement under the judgment of divorce. The court determined that, under the guidelines, Matt would be obligated to pay Mpoli $1,311.50. The court also determined that it was proper to deviate from the guidelines pursuant to WIS. STAT. § 767.511(1m) because adhering to the guidelines would be unfair to Matt, and the court set Matt's child support obligation at $0 per month. The court gave the following reasons: Mpoli's earnings were nearly triple Matt's; as a result of what the court described as Mpoli's "unilateral" decision to move, Matt was forced to leave a well-paying job and might not earn as much in Colorado; and Matt incurred costs associated with his having to break two different leases in Wisconsin and obtain new housing in Colorado. The court stated that in contrast, Mpoli had assistance paying for her moving costs from her new employer and would receive money from the sale of her home in Wisconsin.

¶49     The circuit court further determined that, if it ordered Matt to pay support consistent with the child support guidelines, "there is a high risk he will end up in extraordinary debt, be unable to afford to move or exercise placement, and will interfere with his ability to be a present parent living near his children and spending time with them." The court additionally ordered that "[w]hen [Matt] relocates or is able to offload some of his housing expenses in Wisconsin, he must immediately inform [Mpoli] as that may warrant a revision of child support." And the court subsequently required that Matt, after moving, apply to at least five jobs per week, provide Mpoli proof of his applications, and update Mpoli and the court within two business days of receiving and accepting a job offer.

¶50 Mpoli argues that the circuit court erroneously exercised its discretion because there was insufficient evidence for the court to deviate downward from the child support guidelines. Specifically, she argues that there was insufficient evidence because Matt "never testified or filed any sworn affidavits or declarations regarding any amounts that he expected to pay to move to Colorado, his assets, any amounts that he had in his bank accounts to pay for his move, or anything else with respect to his ability to pay."

¶51 We conclude that there was sufficient evidence to support the circuit court's ruling deviating from the guidelines and setting Matt's child support obligation at $0 during the time period between Mpoli's move to Colorado and Matt's move there. In particular, the court relied on the income and expense statements that it directed the parties to submit for purposes of determining the child support issue, which the court stated showed that Mpoli's income was almost three times greater than Matt's. The significant disparity in the parties' income and the additional expenses that Matt incurred as a result of Mpoli's personal decision to relocate provided the court with reasonable grounds to determine that adhering to the guidelines would be unfair to Matt and justified setting his child support at $0 while Mpoli had primary placement pending Matt's anticipated move to Colorado. *See* WIS. STAT. § 767.511(1m)(b), (i) (stating that a circuit court may consider, when determining whether to deviate from the guidelines, "[t]he financial resources of both parents" and "[a]ny other factors which the court in each case determines are relevant"). Mpoli argues that Matt did not submit evidence regarding the specific costs that he would incur in moving to Colorado. But even without evidence specifying the precise amount of these costs, it was

reasonable for the court to consider that Matt would incur significant costs related to the move.[12]

¶52    Mpoli alternatively argues that it would have been fair to order Matt to pay child support consistent with the guidelines.  However, in advancing this argument, Mpoli does not account for our standard of review.  The proper inquiry is whether the circuit court erroneously exercised its discretion when it determined that it would be unfair to require Matt to pay child support under the guidelines. *See Cook*, 208 Wis. 2d at 171 ("[T]he calculation of child support [is a] matter[] generally left to the sound discretion of the circuit court.").  This is a deferential standard of review, especially when applied to a circuit court's determination of fairness.  Mpoli specifically disputes the court's characterization of her move as "unilateral," she argues that Matt's "financial circumstances were entirely self-imposed," and she points out that she also faced added expenses related to the move.  None of these arguments persuade us that the court erroneously exercised its discretion.  Mpoli does not argue that the court failed to examine the relevant facts or that it misapplied the law.  Further, the court's decision demonstrates that it used a rational process and the conclusion that the court reached was reasonable. *See Borreson v. Yunto*, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656 ("A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a

---

[12] Matt testified at the initial hearing that in September 2024 he began renting a residence in Sun Prairie, in addition to his apartment in Madison, so that the children would not have to change schools in the event that he was awarded primary placement in the relocation proceedings as he requested, and he testified that he would have to pay a minimum of three months' rent for the Sun Prairie residence.  The circuit court determined that Matt's decision to rent the residence in Sun Prairie was reasonable, and the added financial burden of renting this residence is additional evidence that supports the court's determination that adhering to the guidelines would be unfair to Matt.

demonstrated rational process to reach a reasonable conclusion."). Accordingly, we conclude that Mpoli fails to show that the court erroneously exercised its discretion when it determined that adhering to the guidelines would not be fair to Matt.

¶53 Separately, Mpoli argues that the circuit court erroneously exercised its discretion when it denied Mpoli's motion to modify child support to compensate her for the disproportionate amount of time that she had to take off from work to transport the children to their medical appointments while she still resided in Wisconsin with the children. After Mpoli first requested this modification, the court issued an order requiring Mpoli to file proof of the time she took off for the appointments and Matt's failure or refusal to assist with the appointments, after which the court would decide whether to modify child support on this basis. Based on that ruling, Mpoli requested that Matt compensate her in the amount of $806.63 for the time she alleged that she had to take off work to take the children to appointments.

¶54 In considering Mpoli's motion, the circuit court stated that Mpoli "offered no support to show that she ever asked, offered, or did anything to ask or suggest that Matt help contribute to these appointments and to schedule them when he could do so." The court further stated, "Had she offered and had Matt refused to share this burden, the [c]ourt would deviate support downward to reflect the excess burden and cost to Mpoli."

¶55 Mpoli argues that the circuit court erroneously exercised its discretion based on two affidavits and a text message exchange that she submitted in support of her motion, which, according to Mpoli, show that she asked Matt to take the children to medical appointments and that he refused to do so. In her

affidavits, Mpoli listed the dates on which she had to take time off to transport the children to medical appointments. In one affidavit, she averred that Matt was aware of the appointments and, "to the best of [Mpoli's] recollection," Matt did not assist her with any of them, and in the other, she averred that Matt "was aware of all these appointments and could not assist me due to his work schedule." In support of this second averment, she cited a text message exchange between her and Matt. In that exchange, Mpoli texted to confirm that Matt would take one of the children to an appointment at 7:30 in the morning, and asked if he was planning to stay for the appointment. He responded, "After being told over a hundred times that I work at 8:00 am, you still ask stupid questions about me choosing to do things that are [incompatible] with that. I can drop [the child] off around 7:30, but I can't stay."

¶56    Relying on this exchange, Mpoli argues that the circuit court's determination that Mpoli did not provide sufficient proof for a modification requiring Matt to pay her child support based on his refusal to help was an erroneous exercise of discretion. We reject Mpoli's arguments for several reasons. First, the text message exchange was regarding only one of the 27 appointments for which Mpoli averred she had to take time off work. Moreover, Matt was able to take the child to that particular appointment, and Mpoli did not explicitly ask Matt to stay at the appointment, but instead asked whether he was "planning to." In addition, part of the court's reasoning for denying Mpoli's motion was that she did not submit any evidence that she had made an effort to schedule the appointments at times when Matt would be able to attend them, which was consistent with the court's initial requirement that Mpoli provide documentation that she offered Matt opportunities to take the children to appointments. Neither Mpoli's averments nor the text message exchange that she cited in support of her

motion show that she made any such effort. For these reasons, we reject Mpoli's argument that the court's determination was an erroneous exercise of discretion.

## C. Variable costs

¶57 Mpoli argues that the circuit court erroneously exercised its discretion when it ordered Mpoli to bear the children's variable costs during the time that she had primary placement of the children after the relocation and before Matt's move to Colorado. We disagree.

¶58 "Variable costs" are "the reasonable costs above basic support costs incurred by or on behalf of a child, including but not limited to, the cost of child care, tuition, a child's special needs, and other activities that involve substantial cost." WIS. ADMIN. CODE § DCF 150.02(29) (through Oct. 2025).[13] When Mpoli moved to modify child support based on her having primary placement of the children pending the resolution of her motion to relocate, she did not move to modify the responsibility for variable costs outlined in the judgment of divorce. Further, the temporary order regarding child support that was issued after Mpoli relocated pending the final hearing did not address variable costs. Mpoli instead raised the issue of variable costs for the first time in a motion for reconsideration of the circuit court's ruling that she pay Matt's placement-related transportation expenses. When discussing the issue at a subsequent hearing, the court stated that normally, when one party has primary placement, the other party would not be responsible for variable costs because that party would be paying guideline support. The court then recognized that, given that the court deviated from the

---

[13] All references to WIS. ADMIN. CODE § DCF are to the October 2025 register unless otherwise noted.

guidelines in setting Matt's child support obligation at $0, clarification would be helpful on the issue of whether Matt should have to pay for variable costs.

¶59    After allowing Matt a chance to submit briefing on the issue of variable costs, the circuit court ordered that Mpoli pay all of the children's variable costs. The court explained that this ruling was "consistent with usual practice that variables be borne by the parent who has primary placement," and that because the court had good reasons for not requiring Matt to pay child support, this usual practice regarding variable costs should be followed.

¶60    In referring to the "usual practice that variables be borne by the parent who has primary placement," the circuit court was referring to WIS. ADMIN. CODE § DCF 150.035(2). That code provision states that, when a parent has primary placement, that parent pays for the children's variable costs. *Compare* § DCF 150.035(2) (stating guidelines for child support when placement is not shared, without addressing variable costs) *with* § DCF 150.035(1)(b)6. (stating that when placement is shared, "the court shall assign responsibility for payment of the child's variable costs in proportion to each parent's share of physical placement, and based upon a detailed list of the variable costs provided by the parties").[14]    Here, Mpoli argues that the court "mechanistically applied" § DCF 150.035(2), which Mpoli argues was not appropriate because she was not receiving child support consistent with § DCF 150.035(2). We reject Mpoli's

---

[14] For ease of reference, we refer to WIS. ADMIN. CODE § DCF 150.035(2) as applying when placement is not shared, and to § DCF 150.035(1)(b)6. as applying when placement is shared. Specifically, § DCF 150.035(1) applies when "[b]oth parents have court-ordered periods of placement of at least 25 percent or 92 days per year based on the number of overnights or equivalent care under par. (ar) provided by each parent" and when "[e]ach parent is ordered by the court to assume the child's basic support costs in proportion to the time that the parent has placement of the child"; in contrast, subsection (2) applies when subsection (1) does not.

argument because it misstates the court's reasoning. The court acknowledged that a parent who has primary placement is generally responsible for the children's variable costs under § DCF 150.035(2). But in ruling that Mpoli was responsible for the children's variable costs, the court did not reflexively rely on § DCF 150.035(2) without considering the fact that Mpoli was not receiving child support pursuant to the provision. Instead, the court determined that Mpoli should pay for the variable costs incurred while she had primary placement for the same reasons that the court set Matt's child support obligation at $0: because it would be unfair to require Matt to pay for any of the children's variable costs. The court was not, contrary to what Mpoli argues, woodenly following § DCF 150.035(2).

¶61    In arguing that the circuit court erroneously exercised its discretion, Mpoli cites an unpublished decision for its persuasive value. *See Wolfe-Ginter v. Ginter*, No. 2009AP2862, unpublished slip op., ¶5 (WI App July 29, 2010). In *Wolfe-Ginter*, the parents shared placement, but the circuit court ordered the father to pay child support consistent with WIS. ADMIN. CODE § DCF 150.035(2), which, as noted above, generally applies when placement is not shared, and which does not allocate the responsibility of variable costs between the parents. *Wolfe-Ginter*, No. 2009AP2862, ¶¶4, 7. The father challenged the circuit court's decision, and we concluded that the court erroneously exercised its discretion. *Id.*, ¶18. In reaching this conclusion, we relied on WIS. STAT. § 767.511(1n), which states:

> If the court finds under [§ 767.511(1m)] that use of the [guideline] percentage standard is unfair to the child or the requesting party, the court shall state in writing or on the record the amount of support that would be required by using the percentage standard, the amount by which the court's order deviates from that amount, its reasons for finding that use of the percentage standard is unfair to the

child or the party, its reasons for the amount of the modification and the basis for the modification.

We concluded that the court erroneously exercised its discretion because it did not explain why a deviation as substantial as what the court ordered was warranted. *Wolfe-Ginter*, No. 2009AP2862, ¶18.

¶62    In arguing that the circuit court here was required to consider the variable costs when deviating from the child support guidelines, Mpoli relies on the following language from *Wolfe-Ginter*: the circuit court there did "not identify the amount of support the shared placement formula would require, the amount of the variable expenses, and an appropriate share to assign to [the father]." *Id.* We stated that identifying these amounts was "necessary to identify the amount that would be required under the shared placement standard, as required by WIS. STAT. § 767.511(1n)." *Id.*

¶63    Mpoli's reliance on *Wolfe-Ginter* is misplaced because in that case, the circuit court was calculating child support for parties who shared placement of the children. As a result, the court was required, under the child support guidelines, to "assign responsibility for payment of … variable expenses … 'in proportion to each parent's share of physical placement, with due consideration to a disparity in the parents' incomes.'" *See id.*, ¶11 (quoting WIS. ADMIN. CODE § DCF 150.04(2)(b)6. (through Nov. 2009)).[15]  Alternatively, if the court was deviating from the guidelines, the court was required, under WIS. STAT. § 767.511(1n), to state "the amount of support that would be required by using the

---

[15] Language that is substantively similar to that quoted from WIS. ADMIN. CODE § DCF 150.04(2)(b)6. (through Nov. 2009) is now located at § DCF 150.035(1)(b)6. *Compare* § DCF 150.04(2)(b)6. (through Nov. 2009) *with* § DCF 150.035(1)(b)6.

percentage standard [and] the amount by which the court's order deviates from that amount." Here, in contrast, Mpoli had primary placement of the children after relocating to Colorado. Accordingly, because the circuit court here was not deviating from the shared-placement standard, as was the circuit court in *Wolfe-Ginter*, the court here was not required to "identify the amount of support the shared placement formula would require, the amount of the variable expenses, and an appropriate share to assign to [the father]." *See* *Wolfe-Ginter*, No. 2009AP2862, ¶18.

¶64 Mpoli also argues that the circuit court erroneously exercised its discretion because "the order ignored that the amounts owed to [Mpoli] were not just variable expenses per [WIS. ADMIN. CODE § DCF] 150.02(29), but also included medical costs, which are governed by [WIS. STAT. §] 767.513." Mpoli argues that the court's final order regarding the relocation required her to bear responsibility for the children's medical costs during the period of time when she had primary placement after the relocation. But this is not accurate. The order states, "The parties shall continue to share the cost to insure the children and all uninsured medical expenses equally." And prior to the court's final order on relocation, none of the court's temporary orders modified the parties' responsibilities for the children's medical expenses. As the court explained at the hearing held before the court's final order on relocation, the court "didn't say anything about medical expense because that still just is 50/50 between the parties. So the prior order requiring 50/50 sharing is still in place on medical expenses."

### III. Discovery sanctions

¶65 Mpoli argues that the circuit court erroneously exercised its discretion when it imposed a discovery sanction against her. For the reasons

explained below, we conclude that Mpoli fails to show an erroneous exercise of discretion.

¶66 If a court grants a party's motion to compel discovery,

> the court shall, after opportunity for hearing, require the party … whose conduct necessitated the motion … to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

WIS. STAT. § 804.12(1)(c). A discovery sanction is a discretionary determination that we review for an erroneous exercise of discretion. *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶33, 395 Wis. 2d 421, 954 N.W.2d 339. "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." *Borreson*, 292 Wis. 2d 231, ¶6.

¶67 Here, while Mpoli's relocation motion was pending, Matt issued discovery requests. Mpoli refused to answer, responding that WIS. STAT. §§ 804.01 and 767.481 did not authorize discovery "for a postjudgment relocation motion." Matt moved to compel discovery and for an order requiring Mpoli to pay the expenses and attorney fees that Matt incurred related to the motion on the basis that Mpoli's objection was frivolous.

¶68 Mpoli opposed Matt's motion to compel because, according to Mpoli, Matt "did not move to reopen discovery prior to serving his requests and there is no presumptive right to conduct discovery for a post-judgment relocation motion." She acknowledged that "the Wisconsin discovery statutes do not

34

squarely address this issue," but cited federal authority stating that "the flexible discovery provisions of the Federal Rules of Civil Procedure are applicable only to the period of time between the pleadings and trial," *see* ***United States ex rel. Free v. Peters***, 826 F. Supp. 1153, 1154 (N.D. Ill. 1993), and that the federal rules relating to discovery "are designed for pretrial procedure," *see* ***Goldy v. Beal***, 91 F.R.D. 451, 456 (M.D. Pa. 1981). Mpoli also cited a California appellate opinion that states, "'[T]here is no automatic right to conduct discovery … in connection with a postjudgment motion in a marital dissolution proceeding. To secure the right to conduct such discovery, a party must secure the agreement of the other party or must obtain a court order for leave to conduct discovery.'" *See* ***Boblitt v. Boblitt***, 223 Cal. App. 4th 1004, 1024 (2014).

¶69 The circuit court granted Matt's motion to compel and for expenses and fees related to the motion, which the court approved in the amount of $900. The court determined that Mpoli's arguments were "completely baseless." The court explained, "None of the cases that were cited were at all comparable to what happened here for a variety of reasons," and the court then addressed each of the cases that Mpoli relied on.

¶70 The circuit court pointed out that ***Peters*** addressed postjudgment discovery regarding alleged attorney misconduct in a habeas corpus case. *See* ***Peters***, 826 F. Supp. at 1154. The ***Peters*** court emphasized the importance of finality when it stated that, under the federal rules of civil procedure, a party seeking postjudgment discovery regarding alleged fraud must make a prima facie showing of fraud. *Id.* In contrast, here, the court took the position that concerns about finality did not justify restricting discovery: the discovery in this case was regarding Mpoli's motion to relocate, and in family law in general, "custody, placement, child support, these things can always change in the right

circumstances, meaning there is no value for finality of judgment." The court concluded that *Peters* "was dealing with very different circumstances."

¶71 Turning to *Goldy*, the circuit court noted that that opinion addressed postjudgment discovery in litigation regarding the involuntary institutionalization of individuals with mental illness. *See Goldy*, 91 F.R.D. at 451-52. The court quoted language from *Goldy* stating that, in the usual course under the Federal Rules of Civil Procedure, discovery is used to prepare for trial, as well as language discussing the reasons for the federal rules' liberal approach to pretrial discovery. *See id.* at 454. The court stated that the same rationale applied here because, at the time of Matt's discovery request, there was "a trial [on Mpoli's relocation motion] coming up" that the parties needed to prepare for, and because there were "factual and legal issues in dispute."

¶72 As to *Boblitt*, the circuit court distinguished that case on the ground that California has a specific statute that addresses the scope of postjudgment discovery in family law cases. *See* CAL. CIV. PROC. CODE § 2024.050(a) ("On motion of any party, the court may grant leave to complete discovery proceedings, or to have a motion concerning discovery heard, closer to the initial trial date, or to reopen discovery after a new trial date has been set."). In contrast, the court here reasoned, "We have nothing like that in Wisconsin…. We have no statutes that talk about limited discovery available post-judgment. If we did, that might be a reason to read in that nothing else is permitted, but we just don't have anything like that." Instead, the court explained that in Wisconsin, "the civil procedure statutes apply except where otherwise stated," *see* WIS. STAT. § 767.201 ("Except as otherwise provided in the statutes, [WIS. STAT.] chs. 801 to 847 govern procedure and practice in an action affecting the family."), and that "[t]here's

nothing in our discovery statutes that limits them to only applying with leave of the court."

¶73 Accordingly, the circuit court granted Matt's motion to compel and ordered that Mpoli respond to Matt's discovery requests.[16] The court also awarded Matt his attorney fees related to the motion to compel because the court determined that Mpoli's opposition to the motion was not substantially justified. The court stated that the cases Mpoli provided in support of her opposition to Matt's motion to compel were not on point and were not "capable of supporting an argument for the creation or extension of the law."

¶74 Mpoli argues that her opposition to Matt's motion to compel was substantially justified because it was a reasonable argument for extension or interpretation of the law, and because her position had arguable merit.[17] However,

---

[16] At the hearing on Matt's motion to compel, Mpoli also argued for the first time that if leave was not required to conduct discovery, Matt had already, prior to trial in the divorce action, used the 25 interrogatories allotted to him pursuant to WIS. STAT. § 804.08(1)(am). In response, the circuit court concluded that the 25-interrogatory limit was reset when Mpoli filed her motion to relocate and that Mpoli had no basis not to respond to Matt's requests to admit and requests for production.

[17] Mpoli cites two cases addressing the topic of whether a party's position is "substantially justified": *Sheely v. DHSS*, 150 Wis. 2d 320, 338, 442 N.W.2d 1 (1989) ("Losing a case does not raise the presumption that the agency was not substantially justified. Nor is advancing a 'novel but credible extension or interpretation of the law' grounds for finding a position lacking substantial justification." (citation and quoted source omitted)); and *Behnke v. DHSS*, 146 Wis. 2d 178, 183, 430 N.W.2d 600 (Ct. App. 1988) (concluding that in order to be substantially justified, a position "must have some arguable merit"). We observe that neither *Sheely* nor *Behnke* addresses the meaning of the phrase "substantially justified" as it appears in WIS. STAT. § 804.12(1)(c), the relevant statute here, and instead they address that phrase as used in WIS. STAT. § 814.245(3). Moreover, in *Sheely*, our supreme court stated that it disagreed with the court of appeals' statement in *Behnke* that a party's position was substantially justified when it had "arguable merit." *Sheely*, 150 Wis. 2d at 338 n.10; *see also Stern by Mohr v. DHFS*, 212 Wis. 2d 393, 398 n.3, 569 N.W.2d 79 (Ct. App. 1997) (recognizing the *Sheely* court's rejection of the *Behnke* court's adoption of the "arguable merit" standard). In any event, here we conclude that even using the standards that Mpoli cites from *Sheely* and *Behnke*, Mpoli's arguments fail.

the circuit court determined that Mpoli's opposition was not substantially justified because the cases that Mpoli cited were "not at all on point," and Mpoli does not challenge any of the reasons that the court offered when it explained why these cases were not on point. For example, Mpoli does not challenge how the court distinguished the cases that she cited, nor does Mpoli argue that the cases are, in fact, on point. To the extent that Mpoli means to argue that her position was substantially justified simply because she was able to cite cases from other jurisdictions in which postjudgment discovery had been restricted, we reject that argument. The court determined that, although these cases from other jurisdictions "tangentially touched on the issues," they were inapposite in defining applicable Wisconsin law, and that as a result they did not substantially justify Mpoli's opposition.

¶75 We conclude that Mpoli fails to show that the circuit court erroneously exercised its discretion when it determined that her opposition to Matt's motion to compel was not substantially justified. *See State v. Jeske*, 197 Wis. 2d 905, 912, 541 N.W.2d 225 (Ct. App. 1995) (we will affirm if "'a reasonable judge could have so concluded'") (quoted source omitted).

## CONCLUSION

¶76 For the reasons stated, we reverse the part of the circuit court's September 24, 2024 nonfinal order requiring Mpoli to pay Matt's placement-related travel expenses, and we remand with directions that the circuit court enter an order, consistent with this opinion, relieving Mpoli from having to pay Matt's placement-related travel expenses. In all other respects, we affirm.

*By the Court.*—Final order affirmed; nonfinal order reversed in part and remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.